United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 15, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-51720

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant-Cross-Appellee,

versus

DERRYKE KYLE SUMLIN,

Defendant-Appellee-Cross-Appellant.

_____

Appeals from the United States District Court
for the Western District of Texas

_____

Before SMITH, BARKSDALE, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge.

In this criminal case, the government appeals the 24-month sentence imposed by the district court upon defendant Derryke Kyle Sumlin, who was found guilty by a jury of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The district court, at the sentencing hearing, decided <u>sua</u> <u>sponte</u> to downwardly depart from both the United States Sentencing Guidelines range of 235 to 293 months and the mandatory minimum 15-year sentence triggered by 18 U.S.C. § 924(e). Defendant Sumlin cross-appeals his conviction and sentence.

1

We reverse and remand Sumlin's conviction and sentence, because the district court erred in admitting the testimony of the arresting officer regarding the unproven extrinsic bad act by Sumlin of transporting drugs; this testimony was inadmissible under Federal Rule of Evidence 404(b), as interpreted by this court in Beechum v. United States, 582 F.2d 898, 909-18 (5th Cir. 1978).

## I. Facts and Procedural Background

On July 24, 2004, outside of Marlin, Texas, Sergeant Wesley Kingsley was working drug interdiction, which, he later testified, consisted of "looking for persons that are trafficking large amounts of illegal drugs down the highway." He was driving a marked police car between 50 and 60 miles per hour when defendant Derryke Kyle Sumlin passed him from behind, driving a red Corvette. Because Kingsley noticed that the vehicle did not have a front license plate,[1] he followed Sumlin into the city limits of Marlin and stopped him. Kingsley informed Sumlin of the reason for the stop and also told him that he intended to give him a written warning for the violation.

Kingsley checked Sumlin's driver's license by radio, and a dispatcher advised him that Sumlin's license had been suspended due to numerous traffic citations. In response, Sumlin stated that he

---

[1] The Texas Transportation Code requires a rear and front license plate. See TEX. TRANSP. CODE ANN. § 502.404 (Vernon 1995).

2

had a temporary, occupational license that allowed him to operate the vehicle and began to look for it in a bookbag that he had retrieved from the back seat; his search was ultimately unsuccessful.

Kingsley arrested Sumlin for driving with a suspended license, read him his <u>Miranda</u> rights, and searched his person. In response to Sumlin's voiced concern about potential damage to the Corvette should it be towed, Kingsley granted Sumlin's request to call a friend to come retrieve his car, but the friend was unable to do so. Kingsley thereafter initiated conversation with Sumlin regarding this friend, because, as Kingsley would later testify, drug couriers tend to travel in pairs. Eventually, Kingsley contacted the operator of a tow vehicle, and while waiting for it to arrive, conducted a search of the Corvette. Inside the vehicle, he located: (1) what appeared to be a partially-smoked marijuana cigarette in the ashtray; and (2) a 9 mm pistol, loaded with four rounds of ammunition, in the bookbag through which Sumlin had been looking. Also in the bookbag were several papers, bearing the names of Sumlin and his mother. The car was then towed to the impound lot, while Sumlin was transported to jail.

At the lot, Kingsley contacted the district attorney to request assistance in drafting a search warrant for the undercarriage of the car. He also arranged for a canine unit to check the car. The dog alerted to the front and driver's side of

the car, yet no drugs were found inside the vehicle. Sumlin was then transported from the jail to the lot, read his <u>Miranda</u> rights again, and questioned about the Corvette. Kingsley also questioned Sumlin about the handgun. Sumlin responded that he acquired the weapon a long time ago from a friend in Atlanta, knew that he was not supposed to have it, but kept it for protection.

Sumlin was charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).[2] At trial, the government called Sergeant Kingsley, the arresting officer, who testified as to the circumstances of the stop and arrest and his drug interdiction efforts generally. Additionally, he testified that he suspected that Sumlin was transporting narcotics, because: (1) the body of Sumlin's car had several loose or worn screws, which, according to Kingsley, indicated the possible transportation of large quantities of illegal drugs, as traffickers frequently hide drugs in the bodies of their vehicles to prevent law enforcement detection; (2) he spent some time with the car on the side of the road attempting to remove the speakers to see if anything was hidden beneath them; (3) he questioned Sumlin about

---

[2] That statute specifies: "It shall be unlawful for any person--who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

4

the friend Sumlin had called to retrieve his car, because, according to Kingsley, drug couriers, i.e., those who transport large quantities of drugs and money, travel in pairs; (4) though he found only one cigarette, allegedly containing marijuana, he thought that he would find more drugs; (6) he followed Sumlin's car to the impound lot and contacted the district attorney who came there to assist in drafting a search warrant for the undercarriage of the car; (7) the canine unit came to the lot and the dog alerted on the front and driver's side of the vehicle; and (8) he questioned Sumlin about drugs when Sumlin was brought from the jail to the impound lot.

After the prosecutor elicited the aforementioned testimony, the district judge, at the bench, said to him: "What's the charge in this case? Possession of a firearm by a felon? This is a bunch of nonsense you're going into. All the search didn't reveal any drugs. All you're talking about is drugs. I'm going to declare a mistrial in this case in about five seconds."

Sumlin called his mother as a witness. She testified, in pertinent part, that she and her son shared the Corvette and that she and a friend had driven the vehicle to Shreveport, Louisiana on July 23, 2004 (the day prior to Sumlin's arrest) to visit the casinos. She further testified that she owned the gun and that it was she who took the bookbag, containing the gun, with her on this trip for protection. Finally, she testified that upon arriving

5

home after lunch time on July 24, 2004, she did not remove the bag containing the gun from the car as she hurriedly dressed for a 2 p.m. shift at work and took her Toyota there. The jury found Sumlin guilty of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

At sentencing, the government offered evidence of Sumlin's four prior convictions to trigger the 18 U.S.C. § 924(e) 15-year mandatory minimum sentence.[3] In response, Sumlin argued that the government had failed to adequately prove the facts of the prior convictions, specifically noting that the "on or about" dates set forth in the indictments were insufficient to prove that the offenses were committed on "occasions different from each other," as required to trigger the 15-year mandatory minimum sentence. The district court overruled his argument as "frivolous." Sumlin then argued that although he could not prove that the offenses were formally consolidated for sentencing, he had presented numerous affidavits stating that state court judges in Dallas County never enter formal consolidation orders. The district court noted that

---

[3] This statute provides: "In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g)."

6

"these acts were obviously unrelated offenses that occurred on different times" and involved different victims, and overruled his objections.

The PSR calculated Sumlin's base offense level at 33 and his criminal history category as VI, assigning three criminal history points for each of his four prior aggravated robbery convictions.[4] These calculations yielded an advisory guideline range of 235 to 293 months. The district court adopted the PSR's recommendations, but nevertheless decided sua sponte to sentence Sumlin to 24 months' imprisonment, five years' supervised release, a $500 fine, and a $100 special assessment. The judge noted that he "would not have been surprised had the jury returned a different verdict," and that Sumlin's previous record was long ago. He also acknowledged that "this was a very large downward departure for which the government has the right to appeal if it wishes. The court will not be insulted if the government intends or desires to do that. . . ." The prosecutor reminded the judge of the mandatory minimum 15-year sentence, but the judge replied that "the court is departing downward from that."

The government appealed the sentence, arguing that the district court erred when it sua sponte imposed a 24-month sentence upon Sumlin, despite the 15-year mandatory minimum under 18 U.S.C.

---

[4] Sumlin received two additional points for having been on parole at the time of the instant offense.

§ 924(e) and despite the 235 to 293-month guideline range.

Sumlin cross-appealed, arguing that: (1) the government failed to present evidence that the Solicitor General had approved the appeal; (2) the district court erred in permitting the government to introduce prejudicial testimony by Sergeant Kingsley at trial regarding his suspicion that Sumlin was transporting narcotics; and (3) the district court erred in finding that his prior convictions for aggravated robbery were "unrelated" under USSG § 4A1.2(a)(2).

Because the district court erred in allowing Officer Kingsley to testify regarding his suspicion of Sumlin's drug transportation and this error was not harmless, we reverse Sumlin's conviction and sentence and need not reach the other issues presented.

## II. Analysis

Sumlin argues that the district court erred in permitting Sergeant Kingsley to testify regarding his unproven suspicion that Sumlin had transported narcotics. Sumlin correctly points out that he was charged only with a single count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and that he stipulated to the predicate offense of a crime punishable by imprisonment for a term exceeding one year. He explains that he has never been arrested for or convicted of a drug offense, and he notes that no drugs (save for one cigarette that the government alleged contained marijuana, but that was never subjected to a laboratory test) were found in his vehicle. Pointing to Fifth

8

Circuit case law, Sumlin avers that any alleged drug transporting is an extrinsic bad act. Therefore, he explains, its admissibility is governed by Rule 404(b) of the Federal Rules of Evidence. Under this circuit's interpretation of Rule 404(b) in Beechum, Sumlin asserts that Officer Kingsley's testimony should not have been admitted. First, he explains, the government had no proof that he was involved in drug transportation, i.e., the testimony was mere speculation of the arresting officer; as a result, Sumlin argues that it was irrelevant to any issue besides his character and should not have been admitted. Second, he posits that even if it had been proven and was relevant to some other issue, it was highly prejudicial; therefore, he explains, it still should not have been admitted.

The government argues that Kingsley's testimony regarding his suspicion of Sumlin's drug transportation was not extrinsic, but intrinsic, as it completes the story of the crime by proving the immediate context of events in time and place. Therefore, it avers, this testimony did not implicate Rule 404(b) of the Federal Rules of Evidence. Alternatively, it argues that if the court erred in admitting the evidence, such error was harmless. Specifically, it urges that: (1) the jury was fully informed that no drugs were found hidden in the vehicle; (2) Kingsley's testimony regarding suspicion of drug transportation and his subsequent search constituted a small portion of his total testimony; (3) the

9

prosecution did not mention Kingsley's testimony regarding drugs in its closing argument; and (4) the evidence of Sumlin's guilt was overwhelming.

## A. Standard of Review

Where the party challenging the trial court's evidentiary ruling makes a timely objection, we review the ruling under an abuse of discretion standard. United States v. Hernandez-Guevara, 162 F.3d 863, 869-70 (5th Cir. 1998). In a criminal case, review of the lower court's evidentiary rulings is necessarily heightened. Id. at 869.

If we find an error in the admission or exclusion of evidence, we review for harmless error. Id. "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." FED. R. CRIM. P. 52(a). An error affects substantial rights if there is a reasonable probability that the improperly admitted evidence contributed to the conviction. United States v. Williams, 957 F.2d 1238, 1242 (5th Cir. 1992) (citing Schneble v. Florida, 405 U.S. 427 (1972)). Unless such a reasonable probability exists, we are not required to reverse the conviction. Id.

In this case, the defendant initially objected to the relevance of a question asking Kingsley about the significance of loose screws on the body of the car. The judge overruled the objection based on the prosecutor's explanation that the line of

10

questioning related to events that happened later in the evening. Kingsley then proceeded to testify that the loose screws raised his suspicion of a narcotics offense. In response to subsequent questions, he then testified about his fruitless search of the defendant's car for drugs later that night and in the following days. When Kingsley began to testify about a particular conversation he had with the defendant concerning possible drug offenses, the defendant's counsel voiced a continuing objection, which the judge overruled. Since the first objection was not a continuing objection, the defendant did not timely object to the testimony after the first and before the second, continuing, objection. See United States v. Perez, 651 F.2d 268, 273 (5th Cir. 1981). Plain error review applies to testimony not subjected to a timely objection during trial. See United States v. Marrero, 904 F.2d 251, 259 (5th Cir. 1990); FED. R. CRIM. P. 52(b). The entire passage, starting from the first objection to the end of Kingsley's testimony subjected to the second, continuing, objection, described the actions taken related to a suspected drug offense rather than the underlying possession of a firearm offense. Even if a part of the passage is subject to plain error review, we do not believe our analysis and judgment would differ.[5] In addition, the parts timely

---

[5] For the parts subject to plain error review, the error has to: "'(1) seriously affect substantial rights and (2) have an unfair prejudicial impact on the jury's deliberations.'" United States v. Levario Quiroz, 854 F.2d 69, 72 (5th Cir. 1988) (quoting United States v. Garza, 807 F.2d 394, 396 (5th Cir.

11

objected to during trial and now subject to an abuse of discretion standard of review, standing alone, could be sufficient as reversible error.

## B. Discussion

Rule 404(b) of the Federal Rules of Evidence, among others, addresses the relevancy of certain evidence. Rule 404(b) provides:

> Other Crimes, Wrongs, or Acts.--Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

FED. R. EVID. 404(b). Rule 404(b) is designed to guard against the inherent danger that the admission of "other acts" evidence might

---

1986)). This case has strong parallels with Levario Quiroz where plain error was found. Levari Quiroz concerned a murder in possible self-defense. The government improperly submitted evidence about a separate indictment for murder for which the defendant also asserted self-defense. This court held that the two murders had nothing in common with each other and furthered the improper implication that, in addition to the current murder charge, he also "shot two woman," thus impairing his substantial rights by having "unfairly prejudiced the jury's deliberations and verdict." Levario Quiroz, 854 F.2d at 74. The error is more serious here, since the evidence of the drug offense was not based on fact (there was no indictment for the suspected narcotics violations, only conjectures). Kingsley's conjectures strongly implied a related narcotics crime in addition to the possession of a firearms offense. In addition, unlike in Levari Quiroz where there was some link between the testimony and the underlying crime (both crimes were murders wherein the defendant claimed self-defense), there is absolutely no link between the insinuations of a narcotics violation and the proof of the underlying crime here, which is the unlawful possession of a firearm. Our analysis in the harmless error section, *infra*, also bolsters the determination that there is reversible plain error here.

lead a jury to convict a defendant not of the charged offense, but instead of an extrinsic offense.  United States v. Ridlehuber, 11 F.3d 516, 521 (5th Cir. 1993).  "'This danger is particularly great where . . . the extrinsic activity was not the subject of a conviction; the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged.'"  Id. (quoting Beechum, 582 F.2d at 914).

Rule 404(b) only applies to limit the admissibility of evidence of extrinsic acts.  See United States v. Manning, 79 F.3d 212, 218 (1st Cir. 1996).  Intrinsic evidence, on the other hand, is generally admissible "'so that the jury may evaluate all the circumstances under which the defendant acted.'"  United States v. Royal, 972 F.2d 643, 647 (5th Cir. 1992) (quoting United States v. Randall, 887 F.2d 1262, 1268 (5th Cir. 1989)).  See United States v. Maceo, 947 F.2d 1191, 1199 (5th Cir. 1991) ("Evidence of an uncharged offense arising out of the same transactions as the offenses charged in the indictment is not extrinsic evidence within the meaning of Rule 404(b), and is therefore not barred by the rule.").

*1. Classification:  Extrinsic or Intrinsic?*

Our first inquiry is whether Kingsley's testimony regarding the evidence of Sumlin's drug transporting is extrinsic or intrinsic.  Evidence of an act is intrinsic when it and evidence of the crime charged are inextricably intertwined, or both acts are

13

part of a single criminal episode, or it was a necessary preliminary to the crime charged. United States v. Freeman, 434 F.3d 369, 374 (5th Cir. 2005).

We conclude that Sergeant Kingsley's testimony regarding his own unfounded suspicion that Sumlin was a drug transporter is extrinsic evidence. The facts of this case bear a striking similarity to those present in Ridlehuber, 11 F.3d at 516. Ridlehuber was convicted of possessing an unregistered short-barreled shotgun. During a search of Ridlehuber's home, which was leased in his father's name, the police found the illegal gun in question, as well as materials commonly used to manufacture methamphetamine.[6] This court held that the evidence of the alleged drug activity was extrinsic. As it explained:

> The connection here between the offense charged in the indictment and evidence of the uncharged offense is not so clear. We cannot say . . . that the drug-related evidence arose out of the weapons charge . . . The problem is that the government did not prove the existence of a drug lab-it did not have sufficient evidence to do so. If the proof were reversed and Ridlehuber was charged with and convicted of running a drug lab, with the shotgun admitted over objection, the result might be different. Under that scenario, the sawed-off shotgun-a weapon commonly found in illegal drug labs-might fairly be characterized as "intrinsic" evidence since possession of the gun could be said to arise out of the same transaction as the offense charged. But the government did not charge Ridlehuber with running a drug lab and the evidence adduced at trial did not

---

[6] Specifically, law enforcement officials found: (1) a drum containing 230 pounds of sulfuric acid; (2) two gallons of ether; (3) a can of ether starting fluid; (4) a pan containing aluminum shavings; (5) a hot plate; (5) tubing; (6) a Pyrex funnel; (7) thermometers; and (8) rubber stoppers.

14

> prove the existence of a clandestine lab. . . . Furthermore, this is not a situation in which the "other acts" evidence falls outside of Rule 404(b)'s purview because the evidence of the charged and uncharged offenses both were part of a "single criminal episode." The only "criminal episode" proven here was possession of a short-barreled shotgun. The rest is conjecture.

Id. at 521-22 (emphasis added)(citations omitted).

In the case at bar, the government did not prove that Sumlin was transporting drugs. First of all, the only evidence of any drugs whatsoever was the one untested cigarette found in Sumlin's ashtray that allegedly contained marijuana but was never tested in a laboratory to determine its contents. Thus it is questionable as to whether he possessed a controlled substance. Further, nowhere was it alleged or proven that Sumlin had any intent to manufacture, distribute, or dispense any controlled substance, as required by drug transportation statutes. See e.g., 18 U.S.C. § 841 et seq. Also the government never charged Sumlin with transporting drugs, and the evidence adduced at trial did not prove that he was doing so.

Further, this is not a situation in which the other acts evidence falls outside of Rule 404(b)'s purview because the evidence of the charged and uncharged offenses were both part of a single criminal episode. The testimony discussed events far beyond the time period relevant to Sumlin's possession of the firearm. The officer provided testimony regarding his continued search for drugs and attempts to elicit admissions from the defendant some

15

time after the gun was already found and the defendant had already been sent to jail. The only criminal episode proven in Sumlin's case is possession of a firearm by a felon; the rest is conjecture and irrelevant. We conclude that any evidence regarding the arresting officer's suspicion of Sumlin's drug transportation is extrinsic.

*2. Admissibility*

When evidence of another act is extrinsic, such as Officer Kingsley's testimony, we must employ the two-step Beechum analysis to determine its admissibility under Rule 404(b). At step one, we determine whether the extrinsic act is relevant to an issue other than the defendant's character. Beechum, 582 F.2d at 911. If relevant only to character, the inquiry goes no further, because the evidence is inadmissible. If relevant to some other issue, then step two dictates that we assess the requirements under Rule 403. That is, the evidence can only be admitted if its probative value is not substantially outweighed by its prejudicial impact. Id.

Under Beechum, our first step is to decide whether the extrinsic act is relevant to an issue other than Sumlin's character. In order to do so, we first address the threshold question of whether the government offered sufficient proof that the defendant committed the alleged extrinsic offense. Id. at 913. "If the proof is insufficient, the judge must exclude the evidence

16

because it is irrelevant." Id.; see also United States v. Ferrouillet, 1996 WL 696507, *2 (E.D.La. 1996)(unpublished)("Before determining the relevance of the extrinsic evidence, a court must first be convinced that the evidence is sufficient to support a finding that the defendant committed the act."); 2 Weinstein's Evidence § 404.21[2][a], pp. 404-52 ("Other-acts evidence is not admissible unless the trial judge is first satisfied that a reasonable jury could find by a preponderance of the evidence that the defendant committed those acts.").

In the case at bar, the evidence is clearly insufficient to prove the other crime, wrong, or act of drug transportation. As detailed above, the officer's casual testimony regarding the untested partially-smoked cigarette found in the Corvette's ashtray might barely support a conclusion that it was his and contained marijuana, but it was clearly insufficient to prove any of the other essential elements of unlawful drug transportation, e.g., that Sumlin transported such drugs with the intent to manufacture, distribute, or dispense any controlled substance. See e.g., 18 U.S.C. § 841 et seq. Therefore, because the proof of the extrinsic act of drug transportation is insufficient, it is relevant only to the defendant's character and should not have been admitted. Thus, we need not move on to the second step under Beechum.

*3. Harmless Error*

Our inquiry, however, is not complete. Despite our ruling

17

that the district court abused its discretion in admitting Kingsley's testimony, the government argues that this error was harmless. Under the harmless error standard of review, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." FED. R. CRIM. P. 52(a). In other words, we will not reverse a conviction if the error was harmless. United States v. Fuchs, 467 F.3d 889, 912 (5th Cir. 2006), *cert. denied*, 127 S. Ct. 1502 (2007).

To determine whether an error affects the substantial rights of the complaining party, this court has explained: "'[U]nless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required.'" United States v. Williams, 957 F.2d 1238, 1242 (5th Cir. 1992)(quoting Schneble v. Florida, 405 U.S. 427 (1972)).

In the case at bar, we conclude that the district court's error in admitting Kingsley's testimony affected Sumlin's substantial rights; there is a reasonable possibility that this improperly admitted evidence contributed to the conviction. As this court has explained, "[t]he danger of unfair prejudice from admission of the drug-related evidence . . . [is] great," because a drug offense is the kind of crime for which the jury may feel the defendant should be punished, regardless of his guilt as to the charged offense. Ridlehuber, 11 F.3d at 523. See also United States v. Blackstone, 56 F.3d 1143, 1146 (9th Cir. 1995) ("Evidence

18

is . . . particularly prejudicial when, as here, 'the proffered evidence connects a party with a highly charged public issue, such as . . . narcotics.'") (citing 1 <u>Weinstein's Evidence</u> § 403[3], pp. 43-44); <u>United States v. Vizcarra-Martinez</u>, 66 F.3d 1006, 1017 (9th Cir. 1995) ("a misdemeanor conviction for possessing one marijuana cigarette nine years before the crime was committed could have a 'significant' prejudicial effect on the jury's decision") (citing <u>United States v. McLister</u>, 608 F.2d 785, 790 (9th Cir. 1979)).

Sumlin's case was a close one, and even the district judge remarked that he would not have been surprised had the jury returned a different verdict.  In such a case, admitting evidence of drug-related evidence could have easily contributed to the conviction.  That is to say, the jury may have felt that Sumlin should be punished because of possible drug transportation, regardless of his guilt as to the charged offense.

*4. Sentencing Below The Statutory Minimum*

Since we decided to reverse the conviction, we do not need to reach the issue of whether the district court erred in sentencing below the statutory mandatory minimum.  Nevertheless, any re-sentencing in this case will follow precedent, which does not allow the trial judge any discretion to sentence below the statutory minimum, except under explicit statutory exceptions.  <u>See</u> <u>United States v. Krumnow</u>, 476 F.3d 294, 297 (5th Cir. 2007).

## <u>Conclusion</u>

19

For the these reasons, Sumlin's conviction and sentence are REVERSED AND REMANDED.