REVISED, JULY 12, 2013
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 11, 2013

Lyle W. Cayce
Clerk

No. 12-20250

UNITED STATES OF AMERICA

                    Plaintiff - Appellee

v.

MARCUS D. HAMILTON,

                    Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and HIGGINBOTHAM and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Marcus Hamilton ("Hamilton") appeals from a jury verdict finding him guilty of unlawful possession of a firearm as a convicted felon, in violation of 28 U.S.C. § 922(g)(1). Because the district court abused its discretion in admitting certain testimony that attempted to describe Hamilton's alleged gang membership and connect it with illegal firearms, and the error was not harmless under the close facts of this case, we REVERSE the conviction and REMAND.

## I. Background

On July 18, 2009, Sergeant Kerry Richards ("Richards") patrolled southwest Houston pursuant to an undercover investigation into gang-related activity. That afternoon, he observed Hamilton acting suspiciously around an apartment complex. Richards advised his patrol team that he suspected a narcotics deal and that he was going to follow Hamilton's car to see if he could develop probable cause. Shortly thereafter, Hamilton made an abrupt lane change and turned into a shopping center. This led Richards to believe that Hamilton had identified him as a police officer. Hamilton parked in a spot with vacant spaces on either side of it.

Two additional officers, Lewis Childress ("Childress") and Honorio Sanchez ("Sanchez") arrived at the parking lot and observed Hamilton's car. Sanchez testified that he observed the following while slowly driving past Hamilton's parked car:

> When I was passing him up and glanced to my left towards the open space where [he] was parked, when he was leaning out--when his left hand went into the forward motion, or what I believe was in a forward motion, it was coming back from the rebound of the forward motion to the back. It appeared as if he had tossed something. His hand came back . . . to the side of the door . . . [v]ertically, I guess. At that point, he dropped the cap and at that time he was also looking to the back, so he kind of made this kind of motion and came back. At this time was looking back toward the rear of the parking lot. At the same time dropped the baseball cap and continued to watch me as I passed by, and I continued driving.

Hamilton then got out of the car, put the cap on, and began walking around the parking lot. While Childress maintained surveillance on the tossed item, Richards and Sanchez observed Hamilton wandering in and out of several businesses as though he was trying to get out of sight. After about twenty five minutes, Hamilton returned to his car, appeared to contemplate whether to retrieve the item he had thrown, and drove away.

2

While Childress provided surveillance on the area near the dropped item, other officers observed Hamilton making an illegal lane change and executed a stop. A record check by Officer Abel revealed that Hamilton was a convicted felon and affiliated with the Black Disciples gang ("BD"). The officers smelled marijuana emanating from the car and found a scale containing what appeared to be marijuana inside the car's front console. A narcotics detecting canine also alerted to cash totaling over $1800 in Hamilton's front pocket.

When Sanchez learned about the possible presence of marijuana in Hamilton's car, he suspected that Hamilton had thrown out drugs in the parking lot and returned to investigate. He found instead a loaded Glock semi-automatic pistol under the front right tire of an SUV next to where Hamilton's car had been parked. The occupants of the SUV denied any knowledge of the firearm.

Hamilton was charged with being a felon in possession of a firearm in violation of 28 U.S.C. § 922(g)(1). During a jury trial, several officers testified about the series of events that led to the discovery of the gun in the parking lot, including the finding of what appeared to be marijuana during the traffic stop. Over Hamilton's objection, evidence that Hamilton was a member of the BD and that BD members often carry guns was admitted for the purpose of showing that Hamilton had a motive to possess a firearm. Hamilton offered no evidence and the district court denied his motion for a directed verdict. The jury found him guilty and Hamilton timely appealed.

## II. Discussion

Felony possession of a firearm requires proof of (1) a previous felony conviction, (2) knowing possession of a firearm, and (3) the firearm had traveled in or affected interstate commerce. United States v. Meza, 701 F.3d 411, 418 (5th Cir. 2012). The parties stipulated to Hamilton's felon status at the time of the offense and that the firearm had moved in interstate commerce. Thus, the only issue at trial was Hamilton's possession.

## A.    Evidence of Gang Membership

Hamilton argues that the district court erred by permitting the Government to introduce evidence that he was a member of the BD and that members of this gang often carry narcotics and guns.  We review a district court's decision to admit evidence under Fed. Rule of Evidence 404(b) under a heightened abuse of discretion standard.  United States v. Olguin, 643 F.3d 384, 389 (5th Cir. 2011).

At trial, the Government argued that evidence of Hamilton's gang affiliation was admissible to show his motive to possess a firearm.  Hamilton objected and the district court required the Government to provide a witness to testify outside of the jury's presence so it could gain a better understanding of the relation between Hamilton's gang membership and motive.  Robert Tagle ("Tagle"), a police officer with years of experience dealing with Houston gangs, was brought in to testify.  Tagle stated that the BD were among the most structured gangs in southwest Houston and had one of the highest rates of violent crime.  He discussed the criteria police use to identify gang membership, including gang tattoos, and that the Houston Police Department keeps a gang database.  The Government provided Tagle with a copy of a police file that documented Hamilton's affiliation with the BD over a period of years.  Based on that information, Tagle testified that it was his opinion that Hamilton is a BD member.  Tagle further stated that, in his experience, BD members carry semiautomatic weapons like the one Hamilton was accused of possessing for protection and intimidation purposes.

Following Tagle's testimony, Hamilton's counsel argued that gang membership did not touch on the elements of the crime and would only serve to prejudice the jury against Hamilton.  Applying the Beechum test, the district court first determined that evidence of gang membership was probative of motive to possess a firearm and not just character.  The district court then found

that the prejudice that comes inherently from gang membership was not unfair, particularly since Hamilton had admitted to the police that he "was" a member of the BD. Accordingly, the district court concluded that the probative value outweighed prejudice and met "the [Beechum] test and then some."

During opening statements at trial, the prosecution briefly mentioned Hamilton's gang membership. While describing the circumstances of Hamilton's arrest, the prosecution stated that the police officers did a background check, and found that Hamilton was a convicted felon and a documented gang member. The jury did not hear anything further on Hamilton's gang membership until after the court decided to allow the evidence. Regarding the gang affiliation, the prosecution recalled Officer Abel ("Abel"), who participated in the traffic stop of Hamilton, to testify before the jury.[1]

Abel testified that when he ran Hamilton through HPD's Gang Tracker, he found that Hamilton had been affiliated with the Black Disciples since 1998. Abel further testified that he said to Hamilton, "Hey, you're a Black Disciple," to which Hamilton replied, "I was."

Abel stated that in his years of service, he had made numerous (50-100) arrests of gang members, and they possessed guns. When questioned about Hamilton's "I was" comment, Officer Abel testified that gang members often distanced themselves from their gangs, but that "you don't know he's telling the truth or he's not telling the truth. I can't tell if he is or not, okay." He also stated that he had never known of a gang member who left their gang; he stated, "They claim not to be active, but . . . they're still hanging around with the same people."

Abel's testimony was the last that the jury heard before the jury charge and closing arguments. There was no limiting instruction given to the jury

---

[1] The jury did not hear Tagle's testimony because he was not on the witness list.

during Abel's testimony, or during the jury charge. Hamilton's gang membership received brief mention in each closing.

B.   Analysis

Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith" but is "admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Admissibility of evidence under Rule 404(b) is typically governed by the two-part test set out in United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (en banc). First, it must be determined whether "the extrinsic evidence is relevant to an issue other than the defendant's character." Id. at 911. Second, the evidence must possess "probative value that is not substantially outweighed by its undue prejudice" and meet the other requirements of Federal Rule of Evidence 403. Id.

Here, there was no direct evidence that Hamilton was currently in the BD gang. The evidence of Hamilton's BD tattoo and record in the HPD gang database shows that he was a member of the BD (as Hamilton admitted). Had the testimony been limited to these facts, it would have been intrinsic to the case because it was part of the on-scene investigation and thus not governed by Beechum. United States v. Sumlin, 489 F.3d 683, 689 (5th Cir. 2007). Officer Abel's testimony, however, considerably elaborated on Hamilton's probable current gang membership and the connection between gang membership and the motive for a defendant's possession of a gun. Drawing inferences as to these connections based on his experiences was extrinsic testimony subject to Beechum.

In this respect, the case resembles United States v. Sumlin, in which the defendant was also convicted of unlawful possession of a firearm by a convicted felon. 489 F.3d at 684. During the trial, the court allowed an officer to testify

regarding his unproven suspicion that the defendant transported narcotics. Id. at 687. This court held the admission of the testimony erroneous because the evidence was insufficient to prove that the defendant had transported narcotics, so the testimony could only be relevant to the defendant's character. Id. at 691. Further, the error was not harmless because the prejudice from drug-related evidence is great, and the case was a close one in which the jury could have easily returned a different verdict. Id. at 691–692. Therefore, it was reasonable to believe that the drug-related charges contributed to the conviction. See also United States v. Ridlehuber, 11 F.3d 516, 523 (5th Cir. 1993) (evidence of potential drug lab insufficiently substantiated and not harmless in illegal gun possession case).

This, too, was a close case, based entirely on circumstantial evidence. Because the evidence of guilt was sparse, and the prejudice that comes with gang membership may be great, "there is a reasonable possibility that the improperly admitted evidence contributed to [Hamilton's] conviction." United States v. Williams, 957 F.2d 1238, 1242 (5th Cir. 1992) (internal citation marks omitted); see also Sumlin, 489 F.3d at 691. Therefore, Officer Abel's testimony about Hamilton's gang membership, beyond the intrinsic facts that Abel ran a Gang Tracker check on Hamilton and Hamilton admitted that he "was" a BD member and wore a BD tattoo, was inadmissible and not harmless error.[2]

## III. Conclusion

On this basis, we REVERSE Hamilton's conviction and REMAND.

---

[2] We are unpersuaded that the court committed plain error in admitting evidence of marijuana residue, from a scale in Hamilton's car. This evidence was intrinsic to the case because it "completes the story of the crime by providing the immediate context of events in time and place." United States v. Coleman, 78 F.3d 154, 156 (5th Cir. 1996).