# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-51280

United States Court of Appeals
Fifth Circuit

**FILED**

April 4, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

EMMANUEL ANTIONE HEMPHILL, also known as Emmanuel Hemphill, also known as Emanuel Hemphill,

Defendant–Appellant.

Appeals from the United States District Court
for the Western District of Texas
USDC No. 5:12-CR-354

Before PRADO, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

Following a jury trial, Emmanuel Antione Hemphill was convicted of possession with the intent to distribute crack cocaine and conspiracy to possess with the intent to distribute crack cocaine. The district court denied his motion for a new trial. Hemphill asserts that the district court erred in admitting evidence that he was wearing an ankle monitor at the time the two drug

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-51280

transactions for which he was convicted occurred and that the jury was improperly influenced when a photograph of Hemphill, possibly a mugshot, that was not admitted into evidence was sent into the jury room by mistake and viewed by the jury. Hemphill also filed a motion in this court seeking the appointment of new counsel to replace his previous court-appointed counsel, and he has filed a pro se supplemental brief asserting that the district court committed various other errors not raised in the brief filed by his counsel. Because we conclude that the district court did not commit reversible error, we affirm.

## I

This is the second time this case has reached our court. Originally, Hemphill pleaded guilty to both charges contained in the indictment. On appeal, we vacated the conviction, holding that the district court had erred in denying Hemphill's motion to withdraw his guilty plea.[1]

On remand in advance of trial, the Government and Hemphill each filed submissions regarding evidence of the fact that Hemphill was under pretrial supervision at the time of the drug sales forming the basis for the charges. Specifically, the Government filed a notice of its intent to introduce evidence that Hemphill was under supervision, and that he wore an electronic ankle monitoring device at the time. Hemphill filed a motion to exclude this evidence. The court denied Hemphill's motion.

Trial proceeded. The Government's case was based on two sales of crack cocaine to a confidential informant (CI), which took place after the Government had investigated Hemphill and received information indicating that he sold drugs out of his home. In advance of the first sale, the CI placed two calls to Hemphill's mother and was instructed to meet Hemphill at his home to make

---

[1] *See United States v. Hemphill*, 748 F.3d 666, 677 (5th Cir. 2014).

the purchase. The CI testified that he carried out the purchase under the guidance of detectives later that day, and that Hemphill was the seller.

For the second sale, the CI called Hemphill directly to arrange the transaction. This time, when he went to Hemphill's house to consummate the sale, the CI wore a small camera with the lens attached to his shirt, referred to by the parties as a button camera, to record the transaction. However, the CI testified that the house that he entered to make this second "buy" was dark, and that he could not definitively confirm that the seller was Hemphill. The camera footage was similarly inconclusive due to the poor lighting.

The video was offered during the Government's case-in-chief. It showed that the seller for the CI's second purchase was wearing red slippers with a teardrop-like print resembling "something you would see . . . on a bandana," according to a testifying detective. It also showed a light "emanating off" the seller's ankle. When Hemphill was arrested, he was wearing distinctive red slippers with a teardrop-like pattern and had a monitoring device on his ankle that emanated light. The district court allowed testimony reflecting that Hemphill was wearing a monitoring device on his ankle, but sustained Hemphill's objection to the admission of a picture of the device. The jury was also shown a picture of the shoes Hemphill was wearing when arrested. Additionally, Hemphill's pretrial services officer testified over an objection that Hemphill was wearing his monitoring device at the time of both drug transactions, and that data from the monitor shows that he was in his "home zone"—which includes a 600-foot radius—at the time of each of the sales.

In its charge, the district court instructed the jury twice that Hemphill was "not on trial for any act, conduct, or offense not alleged in the indictment." The jury convicted Hemphill on both charged counts after less than an hour of deliberating, including fifteen minutes spent re-watching the video produced by the button camera.

No. 14-51280

However, after the jury returned its verdict, the Government discovered, and informed Hemphill, that twelve exhibits not admitted into evidence had been given to the jury during its deliberations along with the admitted evidence. Hemphill moved for a new trial, alleging that the extraneous evidence tainted the jury's impartiality. The district court conducted a hearing on the issue, asking the jury foreperson and another juror to testify on the matter. The jurors were not informed as to the purpose of the hearing prior to arriving, and testified regarding which exhibits the jury viewed.

Of the twelve exhibits mistakenly given to the jury, the two jurors testified that the only one actually viewed by any of the jurors was a photograph of Hemphill from his shoulders up in ordinary, non-prison attire. The jury foreperson testified that "we were wondering [whether the photograph] was a mugshot or if it was before or after [the crime] had happened," and stated that the jury looked at the picture in an attempt to determine whether the man in the dark video (of the second drug sale) was the same as the man in the picture, i.e., Hemphill. The second juror also testified that the jury viewed only that photograph, stating that the jurors were not certain the photograph was one of Hemphill and corroborating that they attempted to match the photograph to the video.

The district court denied Hemphill's motion for a new trial. It issued findings of fact and conclusions of law and held that there was no reasonable possibility that the picture of Hemphill affected the jury's verdict. Hemphill timely appealed. After Hemphill's notice of appeal but before his opening brief was filed, Hemphill filed a pro se motion for the appointment of new counsel. Hemphill's then-existing appointed counsel responded to the request, after which Hemphill filed a document styled as a "Reply" to his counsel and in further support of his motion for new counsel, in which he detailed several

4

grounds for appeal he contends his appointed counsel overlooked. The court denied his motion.

Subsequently, after the close of briefing, Hemphill filed a new motion to remove his counsel and for the appointment of new counsel, or, alternatively, to proceed pro se, as well as a motion to file a supplemental brief. The court granted Hemphill's motion for the withdrawal of his court-appointed counsel, denied his motion to appoint new counsel, granted his motion to proceed pro se on appeal, and granted his motion for leave to file a supplemental brief. The court construes Hemphill's May 20, 2015, thirty-six page brief in support of his original motion for new counsel to be his supplemental brief.

## II

"We 'review a district court's evidentiary rulings for abuse of discretion,' subject to harmless-error analysis."[2] Likewise, "[w]e review only for abuse of discretion a court's handling of complaints of outside influence on the jury,"[3] and a court's denial of a motion for a new trial due to extraneous influence.[4]

## III

In his original briefing filed by counsel, Hemphill argues that the district court erred by admitting evidence of the ankle monitoring device and by denying his motion for a new trial after evidence of extraneous influence on the jury's deliberations came to light. Additionally, Hemphill asserts that under the cumulative error doctrine, even if none of these grounds would alone constitute harmless error, together they denied Hemphill a fair trial.

---

[2] *United States v. Girod*, 646 F.3d 304, 318 (5th Cir. 2011) (quoting *United States v. Cantu,* 167 F.3d 198, 203 (5th Cir. 1999)).

[3] *United States v. Smith*, 354 F.3d 390, 394 (5th Cir. 2003); *see also United States v. Ruggiero*, 56 F.3d 647, 653 (5th Cir. 1995) ("If, after undertaking [the prescribed] analysis, the district court refuses to grant a new trial, we have stated that we will upset the district court's decision only for an abuse of discretion.").

[4] *Ruggiero*, 56 F.3d at 653.

No. 14-51280

## A

Hemphill first complains that the district court's admission of evidence relating to the fact that he was wearing an ankle monitoring device at the time of the drug sales constituted a violation of Federal Rule of Evidence 404(b).

As a threshold matter, the Government contends that evidence of Hemphill's monitoring device is intrinsic evidence, such that it is not subject to Rule 404(b). Rule 404(b) only applies to evidence of extrinsic acts; intrinsic evidence, in contrast, is "generally admissible."[5] Evidence of another act is intrinsic if it "is part of the crime charged."[6] We note that the evidence at issue here is unusual in the context of Rule 404(b), in that no reference to Hemphill's prior acts themselves was admitted—rather, a consequence of the acts (that is, the fact of supervision) was. Nevertheless, the fact that Hemphill was wearing an ankle monitor is itself evidence that he previously committed some crime distinct of the crime charged, and because the parties do not specifically address whether the rule governing evidence of prior acts is applicable here, we assume it is. The Government argues, however, that the evidence at issue is intrinsic because the fact of supervision is "inextricably intertwined" with the crime charged. It did not make this argument in the district court, and, in any event, we conclude that the district court's evidentiary rulings pass muster even under Rule 404(b). Accordingly, we assume that evidence of the ankle monitor was extrinsic and subject to Rule 404(b).

Under Rule 404(b), extrinsic evidence "of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a

---

[5] *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007).

[6] *United States v. Barnes*, 803 F.3d 209, 220 (5th Cir. 2015); *see also United States v. Ceballos*, 789 F.3d 607, 620 (5th Cir. 2015) ("Evidence . . . is considered *intrinsic* to the charged offense . . . if 'it and evidence of the crime charged are inextricably intertwined, or both acts are part of a single criminal episode, or [the uncharged act] was a necessary preliminary to the crime charged.'" (alteration in original) (quoting *Sumlin*, 489 F.3d at 689)).

No. 14-51280

particular occasion the person acted in accordance with the character."[7]  Such evidence *is* admissible for other purposes, however, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," as long as the prosecutor gives notice.[8]  If the evidence is probative of a permissible issue, the district court must also find that its "probative value . . . is not substantially outweighed by its undue prejudice and [that it] meet[s] the other requirements of Rule 403."[9]

The district court here sustained Hemphill's objection to a photograph of the monitoring device on Hemphill's ankle but overruled his objections to other evidence pertaining to the device, including that he was wearing it at the time of both drug sales and that its data showed he was at home.  The Government contended in the district court, and reiterates here, that evidence of the electronic monitoring device was admissible to prove opportunity and identity.  Specifically, although the video of the second sale was of a poor quality and unclear, it did show a light emanating from the seller's ankle.  Combined with his distinctive shoes, the fact that Hemphill was wearing a monitoring device was thus probative of the fact that he was the seller.  We note for clarity that the device is probative of identity through physical appearance, not through a similarity between the charged offense and the extrinsic act as is often the case under Rule 404(b).[10]  Additionally, Hemphill's pretrial services officer testified

---

[7] FED. R. EVID. 404(b)(1).

[8] FED. R. EVID. 404(b)(2).

[9] *United States v. Girod*, 646 F.3d 304, 319 (5th Cir. 2011) (quoting *United States v. Sanders*, 343 F.3d 511, 518 (5th Cir. 2003)); *see also* FED. R. EVID. 403.

[10] *See United States v. Bailey*, 111 F.3d 1229, 1234 (5th Cir. 1997) (noting that the "crucial consideration" for determining whether evidence is admissible to prove identity under Rule 404(b) "is the similarity of the extrinsic and charged offenses").

No. 14-51280

based on GPS data from the device that Hemphill was at home at the time of the two sales, which is probative of opportunity and identity.

We conclude that the district court did not abuse its discretion in determining that evidence of the ankle monitor was probative of identity and opportunity, and was properly admissible for those purposes as long as its probative value was not substantially outweighed by an undue risk of prejudice to Hemphill.

No evidence of Hemphill's underlying previous criminal conduct was adduced at trial, so the evidence was limited to the fact that Hemphill was being monitored. Additionally, to the extent the sight of the device itself might have an inflammatory effect on the emotions of jurors, the district court's exclusion of the image offered by the Government limits prejudice. In contrast, the probative value of the evidence at issue was substantial. As the video evidence of the second sale was unclear and the CI was unable to definitively conclude that Hemphill was the seller, the fact that Hemphill had a device on his ankle that would emanate light in a manner consistent with that seen in the video, and that he was at home at the relevant time, was critical to the Government's case with respect to this second sale. We thus conclude that the prejudicial effect of the evidence at issue did not substantially outweigh its probative value, and that the district court did not abuse its discretion in allowing the evidence to be admitted.

**B**

Nor can we conclude that the district court abused its discretion in denying Hemphill's motion for a new trial based on the presence of unadmitted exhibits in the jury room during the jury's deliberations. "In any trial, there is initially a presumption of jury impartiality."[11] "This presumption, however,

---

[11] *United States v. O'Keefe*, 722 F.2d 1175, 1179 (5th Cir. 1983).

may be attacked, and 'prejudice may be shown by evidence that extrinsic factual matter tainted the jury's deliberations.'"[12]    Allegations of jury impartiality due to extraneous influence are analyzed under a burden-shifting framework.[13]   First, the defendant must show "that the extrinsic influence likely caused prejudice."[14]   If the defendant makes this showing, the burden shifts to the Government to prove a lack of prejudice, which it can do "by showing there is 'no reasonable possibility that the jury's verdict was influenced by the extrinsic evidence.'"[15]   In considering the effect of extrinsic influence, we must consider the *Ruggiero* factors: "the content of the extrinsic material, the manner in which it came to the jury's attention, and the weight of the evidence against the defendant."[16]

Here, the only unadmitted exhibit that Hemphill argues constituted extraneous prejudicial material is the photograph of Hemphill.  He also does not challenge the scope of the district court's hearing.  Accordingly, we limit our inquiry to the effect of the unadmitted photograph.

The district court concluded that there was no reasonable possibility that the picture of Hemphill affected the verdict.  In so holding, it found that the photograph was cumulative because the CI identified Hemphill in open court,

---

[12] *United States v. Ruggiero*, 56 F.3d 647, 652 (5th Cir. 1995) (quoting *O'Keefe*, 722 F.2d at 1179); *see also United States v. Mix*, 791 F.3d 603, 608 (5th Cir. 2015) ("The introduction of extraneous prejudicial information into the jury room violates a defendant's Sixth Amendment right to an impartial jury and his Sixth Amendment right to confrontation.").

[13] *Mix*, 791 F.3d at 608.

[14] *Id.*

[15] *Id.* (quoting *United States v. Davis*, 393 F.3d 540, 549 (5th Cir. 2004)); *see also United States v. Smith*, 354 F.3d 390, 395 (5th Cir. 2003) (noting that Government's burden to show harmlessness does not arise unless and until "the court determines that prejudice is likely" (quoting *United States v. Sylvester,* 143 F.3d 923, 934 (5th Cir. 1998))).

[16] *Mix*, 791 F.3d at 613 (quoting *Ruggiero*, 56 F.3d at 653).

and that the weight of the properly considered evidence against Hemphill was substantial. Hemphill challenges this holding by asserting that the photograph was "at the heart of the jury's deliberations" because it "spurred the jury into action," prompting it to ask to view the video of the second drug sale in an attempt to compare the picture to the seller. He also contends that the fact that some jurors wondered whether the photograph was a mugshot demonstrates the picture's prejudicial impact.

The district court's conclusion was reasonable. There is nothing inherently prejudicial about a picture of the defendant wearing non-prison attire; indeed, as the district court observed, photographs of the defendant are common in criminal trials. Additionally, the CI identified Hemphill in court, further mitigating the potential harmfulness of the photograph. While Hemphill contends that the jury's attempted use of the photograph to identify the subject of the video—by comparing the picture and the video— demonstrates that the photograph was not cumulative, the photograph was still only a neutral one. We cannot conclude that a photograph of Hemphill prejudiced him, even though the jury attempted to use that photograph as a tool to identify a figure in a video, especially in light of the substantial evidence against Hemphill and the fact that he was present in the courtroom throughout his trial.

The fact that some jurors apparently wondered whether the photograph was a mugshot does not suggest that the photograph was prejudicial. The very fact that Hemphill was facing drug charges in this trial means it was likely that Hemphill would have had a mugshot taken in connection with these proceedings, so even if the jurors believed the photo was a mugshot, such belief would not improperly influence them regarding Hemphill's criminal history.

Finally, the weight of the evidence against Hemphill was substantial. With respect to the second drug sale—the only one Hemphill argues was

affected by the picture—the Government at trial put forth evidence that (1) the CI called Hemphill directly and the two set up a sale of crack cocaine on the phone; (2) when the CI arrived to make the purchase, the sale was consummated just as the two had agreed on the call—two ounces of crack cocaine for $1,200; (3) Hemphill was present at the site of the drug sale when it was completed, according to GPS data; and (4) the seller in the video was wearing distinctive footwear that resembled the slippers Hemphill was wearing when arrested, and had a light emanating from his ankle resembling Hemphill's ankle monitor.  Additionally, the jury deliberated for no more than an hour before finding Hemphill guilty.  The fact that the jurors attempted to further confirm Hemphill's guilt by comparing the photograph to the video does not suggest that they harbored doubts as to his guilt, only that they took their obligation seriously and attempted to use all available resources.

In sum, we conclude that the district court did not abuse its discretion in holding that there was no reasonable possibility that the photograph mistakenly given to the jury during deliberations prejudiced Hemphill.

## C

Finally, because we hold that the district court's admission of evidence relating to Hemphill wearing a monitoring device was not erroneous and that the photograph of Hemphill mistakenly given to the jury did not influence its verdict, cumulative error does not apply.[17]

---

[17] *See, e.g.*, *United States v. Alaniz*, 726 F.3d 586, 628 (5th Cir. 2013) ("Where a defendant-appellant has not established any error[,] there is nothing to cumulate."); *see also United States v. Anderson*, 755 F.3d 782, 799 (5th Cir. 2014) ("Only one error was committed at trial . . . . Accordingly, we conclude that the cumulative error doctrine is inapplicable to this case.").

No. 14-51280

## IV

In his pro se supplemental brief, Hemphill asserts that the district court made various errors separate and aside from those raised by his counsel and discussed above. Specifically, Hemphill argues that the district court erred in admitted a recording of a phone call between the CI and Hemphill's mother, Kathryn Hemphill; that the evidence was insufficient to convict him of conspiracy; that the evidence that Hemphill actually gave crack cocaine to the CI was insufficient to sustain the jury's verdict; that the Government committed improper vouching in its summation; and that the Government failed to establish a complete chain of custody as to the crack cocaine it seized in connection with the case.

With respect to the district court's admission of a recording of the phone call as a statement in furtherance of a conspiracy,[18] Hemphill asserts that the trial record did not contain independent evidence of the conspiracy between Hemphill and his mother in furtherance of which the phone call was allegedly made. In order for evidence to be admissible under Rule 801(d)(2)(E) as non-hearsay, the proponent must establish "(1) the existence of a conspiracy, (2) [that] the statement was made by a co-conspirator of the party, (3) [that] the statement was made during the course of the conspiracy, and (4) [that] the statement was made in furtherance of the conspiracy."[19] Hemphill disputes only the first element—the existence of a conspiracy between Hemphill and his mother to sell crack. In evaluating this element, the statement alleged to be hearsay may be considered, but it "cannot *by itself* establish the 'existence of

---

[18] *See* FED. R. EVID. 801(d)(2)(E).

[19] *United States v. Robinson*, 367 F.3d 278, 291-92 (5th Cir. 2004) (quoting *United States v. Solis*, 299 F.3d 420, 443 (5th Cir. 2002)).

the conspiracy.'"[20]  In other words, the record must contain some "'independent evidence' establishing the conspiracy."[21]

We reject Hemphill's argument that there was no independent evidence of the conspiracy at issue here.  Consistent with the promise Kathryn Hemphill made during the phone call to call her son and inform him that the CI was coming, Hemphill was waiting in his driveway, with the amount of crack cocaine the CI had agreed to buy, when the CI arrived.  This suggests that Kathryn spoke with Hemphill to facilitate the transaction, as she had agreed to do.  Additionally, prior to the second drug sale at issue, Kathryn gave Hemphill's telephone number to the CI.  These two circumstances, coupled with the recording of the phone call itself, support the district court's conclusion that the Government established the existence of the conspiracy.  The district court did not abuse its discretion in admitting the recording.

For the same reasons—most notably in light of the recording—we also reject Hemphill's argument that the evidence of a conspiracy between himself and Kathryn Hemphill was insufficient to support the jury's guilty verdict on the conspiracy charge.

With respect to the sufficiency of the evidence that Hemphill gave crack to the CI, Hemphill argues that testimony merely establishes that the CI picked crack cocaine up from a scale in Hemphill's presence rather than Hemphill handing it to him, that the video evidence of the second sale was unclear, and that the CI's testimony was false and not credible.  As the jury was instructed, in order to establish the possession necessary to convict Hemphill of possession with the intent to distribute, the Government needed

---

[20] *United States v. Nelson*, 732 F.3d 504, 516 (5th Cir. 2013) (emphasis added) (quoting FED. R. EVID. 801(d)(2)).

[21] *Id*. (quoting *United States v. El–Mezain*, 664 F.3d 467, 502 (5th Cir. 2011)).

to prove only that Hemphill had dominion over the drugs at issue.[22]  The jury here could reasonably have concluded that Hemphill had dominion over the crack cocaine placed on the scale and that he intended to transfer it to the CI. Additionally, while the video of the second sale was unclear, it did show both footwear consistent with Hemphill's distinctive slippers and a light emanating from the seller's ankle consistent with Hemphill's monitoring device.  GPS evidence further corroborates that Hemphill was home at the time of the transaction, and the CI testified that he spoke with Hemphill directly to arrange the sale before arriving.  Furthermore, whether the CI's testimony was credible is a question for the jury, and Hemphill has put forth nothing to establish that the testimony was incredible on its face.[23]  Hemphill's sufficiency of the evidence challenges fail.

With respect to Hemphill's contention that the Government committed prosecutorial misconduct by vouching for witness credibility in its closing argument, we likewise find no error, as statements rhetorically reflecting "how we know [the figure in the video and voice on the phone] was the defendant,"[24] before summarizing evidence—which drew no objection at trial and are thus reviewed only for plain error[25]—do not cross the line between argument and "interject[ing one's] personal opinion concerning the merits of the case or the credibility of a witness."[26]

Finally, even if the Government failed to establish a complete chain of custody as to the crack cocaine evidence, "a break in the chain of custody simply

---

[22] *See, e.g.*, *United States v. Salinas-Salinas*, 555 F.2d 470, 473 (5th Cir. 1977).

[23] *See, e.g.*, *United States v. Shoemaker*, 746 F.3d 614, 623 (5th Cir. 2014); *United States v. Reagan*, 725 F.3d 471, 481 (5th Cir. 2013).

[24] *Id.*

[25] *United States v. Fields*, 483 F.3d 313, 360 (5th Cir. 2007).

[26] *United States v. Anchondo-Sandoval*, 910 F.2d 1234, 1238 (5th Cir. 1990).

goes to the weight of the evidence, not its admissibility."[27]   The district court did not abuse its discretion by admitting the crack cocaine.

*    *    *

For the reasons stated herein, the judgment of the district court is AFFIRMED.

---

[27] *United States v. Dixon*, 132 F.3d 192, 197 (5th Cir. 1997) (quoting *United States v. Sparks,* 2 F.3d 574, 582 (5th Cir. 1993)).