## IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 13, 2020

No. 18-50850

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

JOSE ONESIMO LUNA,

      Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:18-CR-205-1

Before DAVIS, HAYNES, and OLDHAM, Circuit Judges.

PER CURIAM:*

Jose Luna appeals his conviction for possessing methamphetamine with intent to distribute and aiding and abetting such possession. We AFFIRM.

## I. Background

Luna, along with codefendant Hector Mora, was charged with, inter alia, possessing methamphetamine with intent to distribute in violation of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-50850

21 U.S.C. § 841(a)(1) and aiding and abetting such possession in violation of 18 U.S.C. § 2. Luna pleaded not guilty and proceeded to trial. Before trial, the Government filed a notice of its intention to introduce under Federal Rule of Evidence 404(b) photographs on Luna's cell phone of money, guns, and bags of purported methamphetamine taken or received within two weeks of the underlying offense. Defense counsel moved in limine to exclude the evidence; the district court agreed to rule on admissibility before allowing the Government to present it.

At trial, the Government introduced the following evidence of the offense. Sergeant Kelly Kennedy testified that he stopped a pickup truck for a traffic violation in January 2018. When Kennedy and another officer searched the truck, they found a backpack containing packages of methamphetamine totaling 1.3 kilograms. They arrested the truck's driver, Hector Mora, and passenger, Elias Sanjurjo. Mora initially denied knowledge of the methamphetamine and was released, but he was later arrested again and charged in the same indictment as Luna. He pleaded guilty to the charges days before Luna's trial began.

Mora testified at Luna's trial and claimed that Luna, through Mora's girlfriend, had asked Mora to pick up Sanjurjo at a bus stop. According to Mora, Luna told him that Sanjurjo would be carrying methamphetamine. Mora admitted that he was hoping for a reduced sentence in return for testifying against Luna. Another witness, Melissa Gonzalez, also had been charged in a federal indictment, but said she did not expect a reduced sentence in return for testifying. Gonzalez testified that a few days before Mora and Sanjurjo were arrested, Luna told her that he was expecting a shipment of methamphetamine soon.

Additionally, Drug Enforcement Administration Agent Drew Walker testified that he had reviewed Sanjurjo's cell phone after his arrest. Sanjurjo

2

had texted with a person whose phone number was linked to the Facebook account of Robert Quintero. In her closing argument, defense counsel identified Quintero as the likely source of the methamphetamine. Quintero texted Luna's phone number to Sanjurjo and said that it was the number of a friend who would pick Sanjurjo up at the bus stop. Luna and Sanjurjo texted and called each other regarding the pick-up. Agent Walker testified that Mora and Luna had been communicating by phone when Mora and Sanjurjo were arrested and that Luna wiped his phone five days after the arrests. Agent Walker also testified that when he arrested Luna in connection with the offense, Luna waived his *Miranda*[1] rights and explained that Quintero had asked him to house a friend who was coming to town for work. Luna had agreed but needed someone to pick up the friend. Mora's girlfriend had volunteered Mora for the task.

During Agent Walker's testimony, the Government sought to introduce photographs that had been deleted from Luna's phone but found in his cloud-based storage. Luna objected to the photos under Rule 404(b) (implicating Rule 403) as unduly prejudicial and not sufficiently related to him or the offense. The district court determined that the photos were admissible under Rule 404(b) as evidence of Luna's intent to commit the offense.

Four photos were admitted into evidence. One photograph ("Exhibit 8"), taken by Luna's phone six days before Mora and Sanjurjo's arrest, depicted four rifles and four rifle magazines. Agent Walker testified that such weapons were "tools of the trade" of drug trafficking.

The other three photographs were sent to Luna's phone by an unknown sender or senders. Agent Walker believed that the pictures had been sent to Luna's phone three to six days before Mora and Sanjurjo's arrest. Exhibit 9

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

depicted a pocketknife, a hammer, a pair of handcuffs, and guns. Agent Walker testified that it depicted "something that a drug dealer might use." Exhibit 10 showed approximately thirteen $100 bills. Agent Walker stated that it depicted "bulk cash derived from narcotics proceeds." Finally, Exhibit 11 showed baggies containing "a crystal like substance." Agent Walker testified that it appeared to depict "four cellophane bags of crystal methamphetamine" containing dealer amounts of the drug. Neither the prosecution nor the defense mentioned the pictures during closing arguments.

The jury found Luna guilty of possessing methamphetamine with intent to distribute and aiding and abetting. The district court sentenced Luna to 286 months' imprisonment and five years of supervised release. Luna timely appealed.

## II.    Standard of Review

We review evidentiary rulings for abuse of discretion. *United States v. Gutierrez-Mendez*, 752 F.3d 418, 423 (5th Cir. 2014).

## III.    Discussion

Luna claims that the district court erred when it admitted Exhibits 8 through 11 into evidence. He argues that the photos were not admissible intrinsic evidence, *see United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007), or extrinsic evidence, *see United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc). He also argues that, even if relevant, the photos fail the Federal Rule of Evidence 403 balancing test.

We conclude that it is unnecessary to decide whether the admission of these photos was error. Even if the district court abused its discretion in admitting the photos, we conclude that any such error was harmless. An evidentiary error is harmless if it "does not affect substantial rights." FED. R. CRIM. P. 52(a). "An error affects substantial rights if there is a reasonable

probability that the improperly admitted evidence contributed to the conviction." *Sumlin*, 489 F.3d at 688.

Luna argues some facts that undermine the Government's evidence against Luna such that the photos may have contributed to his conviction. *See id.* The evidence largely depended on the testimony of Mora and Gonzalez, who were both under federal indictments. Mora admitted that he was hoping for a reduced sentence in exchange for testifying against Luna. The timing of Mora's guilty plea, days before Luna's trial, may have diminished his credibility in the eyes of the jury. Moreover, none of Luna's text and phone communications with Sanjurjo and Mora were proven to involve discussion of illegal activities or drug trafficking.

But more facts weigh in favor of concluding that the district court's error was harmless. Importantly, the Government never mentioned any of the photographs in its closing arguments to the jury. *See United States v. Brito*, 136 F.3d 397, 413 (5th Cir. 1998) (holding that erroneous admission of extrinsic evidence was harmless error in part because the government did not refer to the evidence in its closing argument). Luna also did not mention any of the photographs in closing. Additionally, there was significant evidence supporting Luna's conviction. For example, he wiped his phone five days after the methamphetamine seizure, suggesting knowledge. When texting Sanjurjo, Luna used the pseudonym "Joe."[2] After Mora and Sanjurjo were arrested, there were a number of missed calls from Luna and Quintero to Sanjurjo. Finally, even though Mora and Gonzalez were under felony indictments, they still testified that Luna knew about the methamphetamine package. While Mora admitted that he hoped for a reduced sentence in return for testifying

---

[2] Mora stated that at that time "[e]verybody was calling [Luna] Joe Black."

5

against Luna, Gonzalez did not.  Thus, there was significant evidence beyond the photographs to support Luna's conviction.

Based on the foregoing evidence, there is not a "reasonable probability" that the photographs "contributed to the conviction." *Sumlin*, 489 F.3d at 688. Accordingly, any error was harmless.

AFFIRMED.