**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 91-8471
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JON HAROLD ROYAL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas

_____
(September 8, 1992)

Before HIGGINBOTHAM and DUHÉ, Circuit Judges and HARMON, District Judge.[1]

DUHÉ, Circuit Judge.

Defendant Jon Harold Royal appeals both his conviction of conspiracy to possess cocaine with intent to distribute it and his sentence. We affirm both.

I.

Royal met David LeBoeuf in 1977 and sometime thereafter they began trafficking methamphetamine together in the Houston area. By 1983, the two were trafficking cocaine, with Royal supplying the drug to LeBoeuf for resale. In 1985, Royal was arrested for selling cocaine to an undercover agent. He pled guilty to federal drug charges and was imprisoned upon his guilty plea in April 1986.

_____

[1] District Judge of the Southern District of Texas, sitting by designation.

While imprisoned, Royal enlisted LeBoeuf and others to carry on his drug operations for him.

The jury had before it the following evidence supporting the charge that Royal conspired to perpetuate his cocaine business while imprisoned. After his arrest in 1985, he asked LeBoeuf to assist in transporting cocaine from Florida to Texas. LeBoeuf and his brother-in-law, Jay Husik, met with Royal and agreed that Husik would be paid $2500 per trip. Husik had previously transported cocaine between Austin and Houston for LeBoeuf. Royal arranged and provided the money for the purchase of a truck for Husik and he accompanied Husik on one trip to Florida. Husik made five to ten trips, returning each time with two to six kilograms of cocaine. Of each such delivery, Leboeuf received one kilogram and Royal the rest.

Shortly before Royal was imprisoned, he arranged for LeBoeuf to assume his role in this trafficking scheme. He accompanied LeBoeuf to Florida and introduced LeBoeuf to his supplier. LeBoeuf agreed to pay the Defendant a commission for the cocaine bought in Florida during his imprisonment.

At the time these arrangements were made, the Defendant thought he would be in prison for six to eight months. Actually, he was imprisoned for almost three years. After his release, LeBoeuf refused to pay him the promised commissions because, according to LeBoeuf, the bottom had fallen out of the cocaine market during the Defendant's longer-than-expected prison term. To settle their dispute, LeBoeuf arranged for a loan for Royal's used

car business and agreed to provide him with 500 grams of cocaine.

After federal authorities began investigating LeBoeuf's activities, LeBoeuf, Husik and others agreed to cooperate with these investigators, who arrested the Florida suppliers and got a warrant for the Defendant's arrest. These agents also obtained a warrant to search the Defendant's house, where they found cocaine, scales, business records and guns. Subsequently, Royal was convicted of conspiracy to possess cocaine with intent to distribute it. He was sentenced to thirty years' imprisonment, ten years' supervised release, a $25,000 fine and a $50 special assessment. He now appeals both his conviction and his sentence.

## II.

Royal contends that the district court erred in several evidentiary rulings. We examine a district court's ruling on the admissibility of evidence for abuse of discretion. United States v. Shaw, 920 F.2d 1225, 1229 (5th Cir.), cert. denied, 111 S.Ct. 2038 (1991).

## A.

First, Royal complains of the denial of his motion to exclude evidence that a customer of his, Geno Hernandez, died in 1986 as a result of using cocaine Royal supplied. During cross-examination, he denied that he was Hernandez's supplier at that time. A government rebuttal witness testified that the Defendant supplied the cocaine to LeBoeuf, who was unable to sell it as planned because there was something wrong with it, and that LeBoeuf then gave it to Hernandez. The government argues that this evidence is

relevant to the conspiracy charge because Royal initially intended for Hernandez to take over his cocaine business and chose LeBoeuf for this position only after Hernandez died.  This evidence is also relevant, the government contends, to impeach the Defendant's testimony that he had discontinued all drug trafficking activities by the time Hernandez died.

We are sympathetic to Royal's argument that the evidence of Hernandez's death was improperly admitted.  The government could have offered evidence that the Defendant supplied cocaine to Hernandez in 1986 and intended to pass on his drug business to Hernandez to establish the details of the conspiracy and the time frame in which his drug activities occurred without also offering evidence that Hernandez's death resulted from "bad" cocaine that originated with Royal.  In light of the other evidence against the Defendant, this evidence was completely unnecessary to the government's case and we discern no purpose other than prosecutorial overkill in the government's insistence that it be admitted.

Nonetheless, Royal has not demonstrated that the admission of this evidence prejudiced him in any way.  The evidence of his involvement in the cocaine conspiracy was overwhelming, supported by the testimony of LeBoeuf, Husik, and LeBoeuf's brother, who also transported drugs for LeBoeuf, as well as by the physical evidence found in Royal's home.  He has not convinced us that the jury convicted him to punish him for Hernandez's death, rather than for the drug conspiracy offense with which he was charged.

4

Accordingly, the admission of this evidence, if error at all, was harmless. United States v. Williams, 957 F.2d 1238, 1243 (5th Cir. 1992) (finding erroneous admission of drug courier profile as substantive evidence of defendant's guilt to be harmless error where evidence of guilt was overwhelming).

## B.

Next, Royal argues that the court erred in allowing the testimony by Kalim Tippit that Tippit's mother[2] tried to convince him to testify that the guns and drugs found in the house belonged to him and not to Royal. The Defendant objected on hearsay grounds and now argues that such evidence is admissible only if he, as the defendant, and not a third party, tried to influence the witness's testimony.

We cannot agree. Tippit was a defense witness and the government was entitled to elicit during cross-examination testimony relevant to any possible bias he may have had. United States v. Abel, 469 U.S. 45, 51 (1984) (holding that the Federal Rules of Evidence permit impeachment of a witness showing bias). Although Tippit did not comply with his mother's request, the influence his mother tried to assert on his testimony was certainly relevant to show that his testimony may have been biased. The jury was entitled to hear this evidence so that it could evaluate his credibility. Although Royal evidently believes that this evidence caused the jury to unfairly discredit Tippit's testimony on Royal's

_____

[2]  Tippit's mother was the Defendant's girlfriend. Tippit, his mother and the Defendant shared a house at the time of the Defendant's arrest.

5

behalf, we think it just as likely that Tippit's refusal to perjure himself despite pressure from his mother may have leant more credibility to his testimony. In any case, the evidence was clearly relevant to the jury's evaluation of Tippit's credibility and his possible bias. See United States v. Bratton, 875 F.2d 439, 443 (5th Cir. 1989) (finding no abuse of discretion where court allowed evidence that defendant had physically abused wife to show that her testimony on his behalf may have been motivated by fear).

C.

Royal asserts that evidence found in his home pursuant to a search warrant was unlawfully admitted because the warrant was supported by stale evidence and therefore failed to show probable cause. The warrant was based on a twelve-page affidavit by Special IRS Agent Gary Gallman and described conduct by the Defendant occurring over the several years prior to the issuance of the warrant.[3] A United States magistrate issued the warrant, and the district court determined that the magistrate's finding of probable cause was reasonable, rejected the argument that the evidence was stale, and, in any case, concluded that the "good faith exception" under United States v. Leon, 468 U.S. 897, 922-23 (1984), applied to this case.

---

[3] The affidavit recited details of Royal's involvement with drug trafficking since the early 1980s. It also described his continuing involvement with his co-conspirators, including his receipt of cocaine as partial payment for the commissions LeBoeuf "owed" him, after his release from prison in 1988. The warrant issued on September 5, 1990.

6

We need not address probable cause for the warrant because we conclude that law enforcement officials acted in good faith in relying on the warrant. United States v. Puma, 937 F.2d 151, 158 (5th Cir. 1991), cert. denied, 112 S.Ct. 1165 (1992). Evidence obtained under a warrant, even one based upon inadequate probable cause, is admissible if an officer's reliance on the warrant was objectively reasonable. Id. "Such reliance is objectively reasonable unless the affidavit supporting the warrant is so lacking in indicia of probable cause as to render belief in its existence unreasonable." Id. Furthermore, the "[i]ssuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to a warrant." United States v. Craig, 861 F.2d 818, 821 (5th Cir. 1988). Accordingly, we find no reason to reverse the district court.

D.

Next, Royal complains of the admission of evidence of several prior bad acts. The government offered evidence that he sold LeBoeuf cocaine on numerous occasions during 1983 and 1984, and was arrested in 1985 and imprisoned in 1986 for several sales of cocaine to an undercover drug agent in 1983. Royal argues that the government admitted evidence of these prior bad acts to prove character in contravention of Rule 404(b),[4] that the cocaine sales

---

[4]    Fed.R.Evid. 404(b) provides that "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent preparation, plan, knowledge, identity,

to LeBoeuf were so remote in time that the jury may have convicted him for acts which were barred by the statute of limitations, and that in any case the court should have excluded this evidence under Rule 403[5] because of the likelihood of unfair prejudice.

The government argues that Rule 404(b) should not operate as an evidentiary bar because the evidence was not extrinsic evidence admitted to prove character. Rather, it was evidence essential to proving that the Defendant had engaged in the conduct constituting the offense charged. The government contends that his imprisonment in 1986 and his relationship prior to that time with LeBoeuf was critical background information necessary to understand the charged conspiracy.

Evidence that is "inextricably intertwined" with the evidence used to prove a crime charged is not "extrinsic" evidence under Rule 404(b). United States v. Randall, 887 F.2d 1262, 1268 (5th Cir. 1989). Such evidence is considered "intrinsic" and is admissible "so that the jury may evaluate all the circumstances under which the defendant acted." Id. See also United States v. Williams, 900 F.2d 823, 825 (5th Cir. 1990) ("'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were

_____

or absence of mistake or accident."

[5]    Fed.R.Evid. 403 provides that "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."

'necessary preliminaries' to the crime charged.") (citing <u>United States v. Torres</u>, 685 F.2d 921, 924 (5th Cir. 1982)).

The evidence of Royal's arrest and imprisonment was inextricably intertwined with the crime of which he was charged-- namely, that he conspired with LeBoeuf for LeBoeuf to take over his drug business while he was in prison. The government could not have proven its case without establishing that the Defendant had an ongoing drug business at the time he entered prison. Accordingly, we find no abuse of discretion in the admission of this evidence, especially in light of the court's cautionary instruction.[6]

---

[6] The district court made the following relevant limiting instructions:

> You have been told that the Defendant was found guilty in 1985 of distribution of cocaine. This conviction and other matters which might be considered by you as acts similar to those charged in the indictment have been brought to your attention because you may wish to consider them when you decide, as with any witness, how much of the Defendant's testimony you will believe in this trial. The fact that the Defendant was previously found guilty of another crime or has committed similar acts does not mean that the Defendant committed the crime for which he is on trial, and you must not use this prior conviction as proof of the crime charged in this case. You may consider such conviction for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Rec. Vol. V, p. 718.

> You are here to decide whether the government has proved beyond a reasonable doubt that the Defendant is guilty of the crime charged. The Defendant is not on trial for any act, conduct or offense not alleged in the indictment. Rec. Vol. V, p. 720.

Similarly, we find no error in the admission of the evidence relating the 1983 and 1984 cocaine sales to LeBoeuf. In United States v. Stovall, 825 F.2d 817, 825 (5th Cir. 1987), as amended, 833 F.2d 526 (1987), we examined a credit association fraud scheme. One of the defendants had been convicted of improperly receiving benefits from a loan and he complained that evidence allowed by the district court pertaining to the relationship between himself and another defendant in connection with that loan constituted extrinsic evidence of prior bad conduct. We held that "[s]ince the evidence admitted by the district court detailed the full relationship between [the parties] and established that [the appellant] did receive an immediate financial benefit, . . . it was a legitimate and necessary part of the government's case." Id.

In this case, the evidence pertaining to the Defendant's relationship with LeBoeuf, particularly as it involved prior drug transactions, was relevant to the crime charged in that it allowed the jury to understand the nature of the relationship between the two and evaluate whether it was likely that the Defendant would have conspired with LeBoeuf as charged. Especially in view of the limiting instructions, the admission of this evidence was not an abuse of discretion.

Finally, the admission of these prior acts did not violate Rule 403. The balancing of probative value against prejudicial effect required under this rule is within the discretion of the trial judge, and we reverse such determinations only if we find an abuse of the court's discretion. United States v. Maceo, 947 F.2d

10

1191, 1199 (5th Cir. 1991), cert. denied, 112 S.Ct. 1510 (1992). Finding none, we affirm. See also United States v. Harris, 932 F.2d 1529, 1534 (5th Cir.) (finding proof of prior drug activities more probative than prejudicial), cert. denied, 112 S.Ct. 270 (1991); United States v. Stephenson, 887 F.2d 57, 59 (5th Cir. 1989) (same), cert. denied, 493 U.S. 1086 (1990).

E.

The remaining evidentiary point of error merits only the briefest discussion. Royal complains of the admission of evidence that his attorney made a false representation to the court.[7] He argues that this unfairly prejudiced him before the jury. Our review of the record reveals that the single on-the-record discussion of this issue occurred out of the presence of the jury. The court sustained Royal's objection to its admission. Hence, he has nothing of which to complain.

III.

Next, Royal makes two arguments that the district court committed plain error with respect to the jury instructions. First, he attacks the court's failure to give a unanimity instruction in connection with its multiple conspiracies instruction.[8] He argues that because the jury heard evidence

---

[7] Allegedly, defense counsel falsely represented to the court at a bond hearing that Royal's parole officer knew Royal was in possession of the guns seized from the house, a violation of a term of the Defendant's parole, and that the officer had given him permission to possess the guns.

[8] The court instructed the jury as follows:

If you believe that the evidence has shown the

11

supporting multiple conspiracies, the court's failure to instruct the jury that it must unanimously agree that he had participated in one particular conspiracy was plain error. We disagree. The court's multiple conspiracy instruction reflects that the Defendant was charged in the indictment with one conspiracy. The court's instruction told the jury to convict Royal only if each juror believed beyond a reasonable doubt that he had participated in that conspiracy. Accordingly, there was no error in the court's failure to offer a special unanimity instruction, let alone plain error. See also, United States v. Richerson, 833 F.2d 1147, 1155-56 (5th Cir. 1987) (finding no plain error where court failed to give even a multiple conspiracies instruction).

Second, Royal contends that the court's instructions may have allowed the jury to convict him based upon conduct barred by the statute of limitations. Although the indictment charged him with conduct occurring between May 1, 1985 and April 1, 1990, the court admitted relevant evidence of his conduct occurring prior to this period. The court instructed the jury as follows:

> You will note that the indictment charges the that the offense was committed on or about a specified date. The government does not have to prove that the crime was committed on that exact date, so long as the government proves beyond a reasonable doubt that the defendant committed the crime on a date reasonably near the date stated in the indictment. (Emphasis added.)

---

existence of multiple conspiracies, you may not find the Defendant guilty unless you find beyond a reasonable doubt that he was a member of the conspiracy charged in the indictment and not some other separate conspiracy.

12

While the underlined language may be ambiguous, the facts of the case eliminate the possibility that the jury could have convicted the Defendant for acts barred by the statute of limitations. The government admitted facts supporting the charge in the superseding indictment that Royal conspired with others to perpetuate his cocaine business during the period of his imprisonment. This conspiracy involved an agreement which necessarily must have occurred <u>after</u> the Defendant was arrested and knew that he would be going to prison. He was arrested on May 22, 1985, and so any agreement must have been reached at some point thereafter. The court's failure to narrow the dates for the jury was not plain error.

IV.

Royal challenges his sentence, contending that the district court unlawfully enhanced it. He was indicted under and convicted of violating 21 U.S.C. § 846, which provides that persons convicted of conspiracies involving controlled substances "shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy." The object of the conspiracy for which Royal was convicted was possession with intent to distribute cocaine, a violation of 21 U.S.C. § 841.[9] He was therefore subject to the penalties of that

---

[9] Specifically, Royal was convicted of conspiring to violate 21 U.S.C. § 841(a), which makes it "unlawful for any person knowingly or intentionally (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance."

provision. Under § 841(b), three penalty ranges, based upon the amount of cocaine involved, apply to this offense: 1) ten years to life if five kilograms or more of cocaine were involved; 2) five to forty years if five hundred grams of cocaine or more were involved; and 3) zero to twenty years for all other cocaine offenses (except those involving death, serious bodily injury or repeat offenders).

The proof at sentencing established that the Defendant conspired to traffick in more than five kilograms of cocaine. His sentence, thirty years' imprisonment with ten years' supervised release, falls within the range provided by the statute for that amount, ten years to life. He argues that, because the superseding indictment failed to allege the quantity of cocaine involved, his maximum appropriate sentence was twenty years. He contends that sentencing him within the higher sentence range based upon the quantity involved when the indictment did not allege such quantity constitutes an enhancement of his sentence.

Royal argues that for the government to seek an enhanced sentence under § 841(b), the quantity of drugs triggering that enhancement must be alleged in the indictment. Any other notice, he contends, is constitutionally deficient.[10] The superseding

---

[10] Royal does not challenge the standard of proof applicable to sentencing factors, conceding that quantity need not be proven beyond a reasonable doubt. See McMillan v. Pennsylvania, 477 U.S 79 (1986). Furthermore, he evidently does not dispute that the court was entitled to find, from the evidence produced at sentencing, that his conduct constituting the offenses of which he was convicted involved more than five kilograms of cocaine. In fact, the evidence established that ninety-five to one hundred kilograms of cocaine were involved.

14

indictment in this case made no mention of a specific quantity of cocaine. The Defendant received notice that the government intended to seek a sentence based upon quantity when the government filed a "Penalty Enhancement Information" several days after the jury returned its guilty verdict and three months before his sentencing. In addition, the Presentence Report notified him that the quantity of cocaine would be relevant in determining his sentence. At the sentencing hearing, the government presented two witnesses who testified about the amount of cocaine involved and he had opportunity to present controverting evidence.

This circuit is part of an overwhelming majority of courts which have concluded that quantity is not an element of the offenses proscribed by § 841(a). See United States v. Lokey, 945 F.2d 825, 836 (5th Cir. 1991) (quoting United States v. Morgan, 835 F.2d 79, 81 (5th Cir. 1987).[11] Rather, quantity is relevant only at sentencing under § 841(b). Id. Royal does not allege that the indictment did not adequately notify him of the charges against him. Because quantity is not an element of the offense of which he

---

[11] See also the following cases holding that quantity is not an element under § 841(a): United States v. McHugh, 769 F.2d 860, 868 (1st Cir. 1985); United States v. Campuzano, 905 F.2d 677, 679 (2d Cir.), cert. denied, 111 S.Ct. 363 (1990); United States v. Gibbs, 813 F.2d 596, 599-601 (3d Cir.), cert. denied, 484 U.S. 822 (1987); United States v. Powell, 886 F.2d 81, 85 (4th Cir. 1989), cert. denied, 493 U.S. 1084 (1990); United States v. Levy, 955 F.2d 1098, 1106 (7th Cir. 1992), petition for cert. filed, __ U.S.L.W. ___ (U.S. Apr. 1, 1992) (No. 92-____); United States v. Woods, 834 F.2d 1382, 1388 (8th Cir. 1987); United States v. Sotelo-Rivera, 931 F.2d 1317, 1319 (9th Cir. 1991), cert. denied, 112 S.Ct. 1186 (1992); United States v. Cross, 916 F.2d 622, 623 (11th Cir. 1990), cert. denied, 111 S.Ct. 1331 (1991); and United States v. Patrick,959 F.2d 991, 995 n.5 (D.C. Cir. 1992).

15

was convicted, he was not entitled to be notified through the indictment that quantity would be relevant to his sentencing. The notice he received that the court would take quantity into account when sentencing him was sufficient to allow him to present evidence, if any, disputing the government's evidence concerning quantity. Accordingly, we affirm his sentence.

V.

Finally, Royal argues that he received ineffective assistance of counsel during his trial. To succeed, he must prove that 1) his counsel's performance was deficient and 2) this deficient performance prejudiced the case. Strickland v. Washington, 466 U.S. 668 (1984); Wilkerson v. Collins, 950 F.2d 1054, 1063-64 (5th Cir. 1992), petition for cert. filed, __ U.S.L.W. ___ (U.S. Mar. 18, 1992). We presume that counsel's performance falls within "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. To establish prejudice, Royal must demonstrate a reasonable probability that the result of his trial would have been different but for his counsel's errors. Id., at 694.

First, he argues that his attorney failed to move to dismiss the indictment for uncertainty or to move for a bill of particulars. He has not established that his counsel's error, if it be such, prejudiced his case. In Morlett v. Lynaugh, 851 F.2d 1521 (5th Cir. 1988), cert. denied, 489 U.S. 1086 (1989), the defendant made an ineffective assistance claim based, in part, on his counsel's failure to move to quash the indictment. We stated:

16

> [i]f Morlett's counsel had made a timely motion to quash, the State would have been obligated to specifically plead the method of coercion used by Morlett to influence Herrera at the murder trial. . . As the evidence at trial demonstrated that Morlett used threats to coerce Herrera to testify falsely, the State could simply have reindicted Morlett specifically alleging the coercion. Thus, even assuming counsel's performance was deficient in failing to move to quash, no prejudice has been shown.

Id., at 1525. Similarly, in this case, had Royal's counsel made the motions he now suggests, the Government would simply have made the indictment more specific.

Royal next points us to counsel's failure to object to the court's jury charge. He attacks his counsel's performance with respect to these instructions for the same reasons he attacked the instructions directly. Having previously concluded that he was not prejudiced by the court's failure to include the instructions requiring unanimity and narrowing the applicable dates, we conclude that this indirect attack on the instructions also fails. The overwhelming evidence of the Defendant's guilt further supports our conclusion that he suffered no prejudice as a result of his counsel's performance. See e.g., United States v. Oakley, 827 F.2d 1023, 1026 (5th Cir. 1987) (ineffective assistance claim fails, in part, because of overwhelming evidence against defendant).

## VI.

For the reasons stated above, we affirm the Defendant's conviction and his sentence.

AFFIRMED.

17