# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-50320

United States Court of Appeals
Fifth Circuit

**FILED**
August 3, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

IRICK DRON ONEAL,

    Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:16-CR-283-1

Before JOLLY, DENNIS, and ELROD, Circuit Judges.

PER CURIAM:*

    Irick Dron O'Neal was convicted by a jury of violating 18 U.S.C. § 1591 for sex trafficking a minor. Over the course of a week, O'Neal prostituted a fifteen-year-old female minor, D.F. He now appeals his conviction and his life sentence. He argues that the government failed to show that he was aware of D.F.'s age. We hold that there is sufficient evidence for the jury to have concluded that O'Neal was aware of D.F.'s age, acted in reckless disregard of

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-50320

that fact, or had a reasonable opportunity to observe D.F. Additionally, although some evidence—specifically, a photograph from D.F.'s sixteenth-birthday party and testimony elicited from D.F. that the party took place in a federal courthouse—was erroneously admitted, this evidentiary error did not affect O'Neal's substantial rights. Finally, O'Neal challenges his life sentence for lack of sufficient factual findings to support an enhancement based on a pattern of activity. That argument was forfeited, however, because he failed to adequately brief the contention.

In short, we find no reversible error. Thus, we AFFIRM O'Neal's conviction and his sentence.

I.

A.

On October 14, 2016, undercover agents conducted a sting operation at the MCM Grande FunDome Hotel in Odessa, Texas, to rescue sexually exploited minors. In the course of this operation, law enforcement officers arranged for underage girls to come to the FunDome under the pretense of offering them money in exchange for sex. D.F. was one of those underage girls. At the FunDome, she met a law enforcement officer in a hotel room and agreed to provide sexual services to him for $300. The officer immediately arrested her.

O'Neal was also at the FunDome. Law enforcement officers observed his pacing back and forth and repeatedly walking into the middle of a parking lot so he could see the room where D.F. was located. After D.F. was arrested, a different law enforcement officer detained O'Neal and brought him to a police station. While there, O'Neal admitted to law enforcement officers that he knew D.F., saying he was introduced to her by a man named T. White, who was "running her," i.e., prostituting her, but who told O'Neal that he "could have her." At this time, O'Neal indicated that he thought D.F. was nineteen years

No. 17-50320

old, because (1) she had an ID (which was fake) and (2) she used this ID to rent a hotel room. But he also admitted to never seeing D.F.'s ID. When examined by police at this time, O'Neal did not dispute running Rashanda Dunbar—O'Neal's girlfriend and a prostitute who had helped O'Neal traffic women in the past—or D.F. Instead, he said that Dunbar gave him money even though he did not provide her protection or set up her advertisements because his "game [was] strong," and he was a "finesse pimp" rather than a "gorilla pimp"; that is, he did not use physical coercion. He also said that he generally made sure girls were over the age of consent by checking their IDs.

## B.

One month later, O'Neal was indicted for one count of sex trafficking a minor in violation of 18 U.S.C. § 1591(a). The statutory crime of sex trafficking a minor who has not reached the age of eighteen has two elements: (1) the government must show that the defendant knowingly placed a person into prostitution by various means and (2) that defendant knew, or recklessly disregarded the fact, that the person had not attained the age of eighteen years. 18 U.S.C. § 1591(a).[1] But, the statute provides, the government can forgo proving the second element if it can prove that "the defendant had a reasonable opportunity to observe the person" placed in prostitution. 18 U.S.C. § 1591(c).[2]

---

[1] 18 U.S.C. § 1591 **(a)** Whoever knowingly—
    **(1)** in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; . . . knowing, or . . . in reckless disregard of the fact, . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

[2] 18 U.S.C. § 1591 **(c)**:
    In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or

No. 17-50320

O'Neal's trial started on January 17, 2017. At trial, the government called multiple witnesses, including four law enforcement officers, D.F., and Dunbar.

During its case in chief, the government introduced a picture of D.F. with a cake, inscribed with "Happy 16th birthday!" Further, the government elicited testimony from D.F. that the birthday picture was taken in a room at the courthouse, after D.F. was arrested but before O'Neal's trial. O'Neal objected to the picture under Federal Rule of Evidence 403, arguing that the picture was unfairly prejudicial because it (1) stated that D.F. was sixteen years old and (2) showed her looking younger than her appearance at the relevant time period. The government responded that it was introducing the picture as anticipated rebuttal to other photographs of D.F. that the defense would show, arguing that the picture "is simply an image that the government intends to show during its closing so that they can have an idea of how the girl is." The district court overruled the objection.

After law enforcement officers testified, Dunbar took the stand. She said that she had known O'Neal since 2003 and that she prostituted for him. In relation to this case, Dunbar testified that O'Neal brought D.F. to Dunbar's house so they could meet each other after O'Neal picked D.F. up. Dunbar testified that both she and O'Neal would drive D.F. to apartments, hotel rooms, and houses to meet her customers. Dunbar said that it was common practice for Dunbar to receive a call from a prostitute and then either she would pick up the prostitute or she would direct O'Neal to pick up that prostitute. And O'Neal was the one who would call D.F. to let her know that O'Neal and Dunbar were on the way. Dunbar said that they would spend one to two hours

solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

in the car per day during the week in which all three were together. Dunbar testified that all of D.F.'s money went to O'Neal.

D.F. testified next. She confirmed many of Dunbar's details, including that both Dunbar and O'Neal would drive D.F. to different men, that she turned all of her money over to O'Neal, that she received all of her money from O'Neal, and that she never paid Dunbar. D.F. further testified that she received drugs from O'Neal and that she went to O'Neal's house a few times without Dunbar, in which D.F. and O'Neal engaged in sex and D.F. cleaned O'Neal's house. The government asked her about the photograph from her sixteenth-birthday party. D.F. said that the photograph was of her on her sixteenth birthday and that it was taken in the federal courthouse after she was detained.

Next, O'Neal took the stand. O'Neal testified that he had prostituted women in the past, including Dunbar. At the time D.F. entered the scene, however, he said he was no longer prostituting them. Instead, O'Neal said Dunbar used his phone to conduct prostitution business, including that of D.F., while he was in the car with her. O'Neal minimized the extent that he and D.F. saw each other. But, on cross-examination, O'Neal agreed that he had a chance to look at D.F., and he acknowledged that he saw her four to five times. Further, O'Neal admitted to seeing D.F. in some photographs and agreed with the government's statement that his phone sent and received more than 100 text messages to and from D.F. In these messages, D.F. referred to O'Neal as "Daddy," and they contained the following: D.F. asking O'Neal for food and "candy," meaning drugs; O'Neal providing D.F. with instructions about what to call herself, what to wear, where to be, and how much to charge; O'Neal telling D.F. that she was "very sexy" to him; and D.F. telling O'Neal that she was "horny." Finally, O'Neal admitted that it would be reckless for a pimp not to check a potential prostitute's ID. He excused his own failure to not check

D.F.'s ID, however, by saying that Dunbar was going to be prostituting D.F., not he.

The jury found O'Neal guilty of violating 18 U.S.C. § 1591. At his sentencing, O'Neal objected to various parts of the presentence report ("PSR"). The district court overruled all objections. After imposing enhancements—including a five-level enhancement under U.S.S.G. § 4B1.5(b)(1) based on O'Neal's pattern of activity involving prohibited sexual conduct—the probation officer calculated a total offense level of 43. O'Neal's criminal history category level was III. So, under the Guidelines, O'Neal's advisory sentence range was for life, a sentence that the district court imposed.

O'Neal appealed. He now argues that the district court reversibly erred by admitting the photograph that showed D.F. with her sixteenth-birthday cake, and further erred by allowing D.F. to testify that O'Neal had sex with her and provided her with drugs. He also argues that the evidence is insufficient to establish that O'Neal had the requisite level of awareness of D.F.'s age. Finally, he argues that the district court erred by applying a sentencing enhancement for a pattern of prohibited activity. We consider each of these arguments as follows.

## II.

## A.

The first issue we undertake is whether the district court erred in admitting the photograph of D.F. with her sixteenth-birthday cake. But before we address that issue, we must address the parties' disagreement over the standard of review; that is, whether an abuse-of-discretion standard or a plain-error standard applies.

O'Neal contends that we should review the district court's admission of the photograph under an abuse-of-discretion standard, arguing that his original objection to the photograph under Federal Rule of Evidence 403 for

No. 17-50320

the photograph being unfairly prejudicial was enough to preserve his objection. But in his brief, and at oral argument, O'Neal relies primarily on a different reason that the photograph is prejudicial than he did in his original 403 objection at trial. At trial, he argued that the photograph was prejudicial because it showed (1) D.F. was sixteen and (2) D.F. looked younger than at the time of the relevant events. But on appeal, he argues that "the danger of unfair prejudice comes from a juror's possible inference that DF ha[d] a special relationship with the courthouse." This argument is clearly different from the objection made at trial. Consequently, the district court had no opportunity to rule whether the photograph showed that D.F. had a special relationship with the courthouse. So, we will review the district court's decision to admit the picture and allow the testimony for plain error. *See United States v. Williams*, 620 F.3d 483, 488–89 (5th Cir. 2010) ("[W]here the defendant did not object to the evidence on the basis presented on appeal, we review the district court's evidentiary ruling for plain error."); *United States v. Burton*, 126 F.3d 666, 671 (5th Cir. 1997) ("An appellant must raise an objection to the admission of evidence at trial such that the issue is presented to the district court 'with sufficient specificity.'" (quoting *United States v. Maldonado*, 42 F.3d 906, 910 (5th Cir. 1995))).[3]

---

[3] If we treated the introduction of the photograph as independent of D.F.'s testimony that followed, we would apply an abuse-of-discretion standard of review to reviewing the admission of the picture alone. Given the timing of D.F. elaborating on the picture, however, we do not treat the photograph independently of the testimony. But this point has no effect on the outcome of the case. The standard of review under abuse of discretion would call for a harmless-error analysis, and there is essentially no difference between this analysis and plain error's third prong—whether the error affects the defendant's substantial rights. *Compare* Fed. R. Crim. P. 52(a) (stating that an error is harmless when it does not affect a defendant's "substantial rights"), *with* Fed. R. Crim. P. 52(b) (stating that a court may consider a plain error only if it affects a defendant's "substantial rights"). Our conclusion here is that the introduction of the photograph and the testimony did not affect O'Neal's substantial rights. So, although there was a proper objection to the photograph, we consider it with D.F.'s testimony.

No. 17-50320

B.

To show plain error under Federal Rule of Criminal Procedure 52(b), O'Neal must show: (1) an error or defect not affirmatively waived (2) that is "clear or obvious, rather than subject to reasonable dispute" and (3) that affected his substantial rights. *United States v. Prieto*, 801 F.3d 547, 549–50 (5th Cir. 2015) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). If these three conditions are satisfied, we have "*discretion* to remedy the error—discretion which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Puckett*, 556 U.S. at 135 (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). Examining an error is a fact-specific analysis, so comparing error analyses from one case to another is not necessarily helpful. *See United States v. El-Mezain*, 664 F.3d 467, 526 (5th Cir. 2011), *as revised* (Dec. 27, 2011).

1.

First, we conclude that there was a legal error in admitting the picture and testimony. Rule 403 states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of  . . . unfair prejudice . . . or needlessly presenting cumulative evidence."

Here, the picture had minimal probative value. The jury had the opportunity fully to observe D.F. at trial, only a few months after the crime occurred. Furthermore, it had a copy of her fake ID, in which D.F. looks substantially the same as she did in the sixteenth-birthday picture. The picture was taken more than a month after D.F. was in custody.

On the other hand, the potential prejudicial effect was high. The photograph was taken on her birthday in the courthouse. D.F. is pictured with a cake that reads "Happy 16th birthday," making it difficult for the jury to separate the image of the girl from her age of sixteen that was placed on the

No. 17-50320

cake.  A few gifts appear in the picture beside the cake, indicating that D.F. was given a birthday party.  Then, the testimony came out that the photograph was taken at the courthouse.  The jury, thus, could easily assume that court employees were sympathetic with D.F., as opposed to the defendant— both of whom were called to testify to the jury.  This was improper, because the jury was called upon to weigh the testimony of each.

To the point: The probative value of the picture and testimony was substantially outweighed by the risk of unfair prejudice.  The picture and the concomitant testimony should have been excluded under Rule 403, and its admission was legal error.

2.

Second, we hold that the error was plain.  There was no evidentiary reason—in the light of the other evidence, including her presence in the courtroom and her fake ID—for the government to introduce this picture and the testimony relating thereto.  Furthermore, it must have been clear that the picture showed the friendliness of court employees and that such approval stood in contrast to the opprobrium shown by the government to the defendant and his debased conduct.  Thus, the error in admitting the picture and testimony, we think, was plain.

3.

Thus, we find that there was an error and that the error was plain. Under the third prong of plain error, however, the error must affect a defendant's substantial rights.  An error affects a defendant's substantial rights only when there is "'a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018) (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)); *see also Puckett*, 556 U.S. at 135 (saying that an error affects a defendant's substantial rights when he

9

demonstrates that the error "affected the outcome of the district court proceedings" (quoting *Olano*, 507 U.S. at 734)).  The burden is on the defendant to establish prejudice, and that burden "should not be too easy."  *United States v. Mares*, 402 F.3d 511, 521 (5th Cir. 2005) (quoting *United States v. Dominguez Benitez,* 542 U.S. 74, 82 (2004)).

The crucial issue for the jury to decide was whether O'Neal had knowledge, either actual or constructive, that D.F. was under eighteen, which can be shown by evidence that O'Neal either was reckless to the fact that D.F. was under 18, or had a reasonable opportunity to observe her.[4]  We conclude below that because there was inescapable evidence of O'Neal's knowledge, the outcome of the trial was unaffected by the error.

a.

First, we examine the evidence that O'Neal recklessly disregarded the fact that D.F. was under the age of eighteen.

We have not had many cases that discuss a defendant's reckless disregard of a victim's age under § 1591.  But the common definition of reckless disregard is "[c]onscious indifference to the consequences of an act."  *Disregard*, Black's Law Dictionary (10th ed. 2014); *see also United States v. Groce*, 891

---

[4] The relevant statute provides,

> **(a)** Whoever knowingly—**(1)** . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; . . . *knowing, or . . . in reckless disregard of the fact*, . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished . . . .
>
> . . .
>
> **(c)** : In a prosecution under subsection (a)(1) in which *the defendant had a reasonable opportunity to observe the person* so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government *need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.*

18 U.S.C. § 1591 (emphasis added).

No. 17-50320

F.3d 260, 268 (7th Cir. 2018) (holding that criminal recklessness "requires actual awareness of a substantial risk and conscious disregard of it"). And in *United States v. Phea*, we held that the evidence was sufficient to convict a defendant of knowing, or acting in reckless disregard of the fact, that a victim was under eighteen when (1) he knew the victim did not have an ID sufficient to obtain an airline ticket, (2) he spent significant time with the victim, (3) he had sex with the victim, and (4) the jury was able to adduce that the victim was under the age of eighteen when she testified at trial. 755 F.3d 255, 260–61 (5th Cir. 2014).

This case presents closely similar facts that demonstrate clearly and indisputably that O'Neal recklessly disregarded the fact that D.F. was younger than eighteen. Like the defendant in *Phea*, O'Neal spent significant time with D.F. and had sex with her. Furthermore, the jury had the opportunity to see D.F. and observe that she was under the age of eighteen. *See id.* Although O'Neal says he thought that D.F. was eighteen because she was able to rent a hotel room, he did not even take the time to look at her depiction on her ID; albeit a fake ID, it was an authentic picture of D.F. Indeed, O'Neal admitted that it would have been reckless for him not to look at D.F.'s photograph ID to verify that she was eighteen. But his sole excuse for not looking at the ID was that Dunbar, not he, was the one "running" D.F., a defense that the jury obviously rejected. On the evidence before it, the jury easily and reasonably could decide that it is reckless for one involved in sex trafficking women to fail to take steps to verify that a woman was over the age of eighteen.

Thus, the jury had absolutely compelling evidence to conclude that O'Neal recklessly disregarded the fact that D.F. was under eighteen.

b.

Furthermore, we think that the error did not affect the outcome of the trial, because the strength of the evidence was plentiful to allow a jury to

conclude with certainty that O'Neal had a reasonable opportunity to observe D.F.   In addressing "reasonable opportunity to observe" as a basis for knowledge under the statute, this method of analysis will often overlap with a "reckless disregard" analysis.

In *United States v. Copeland*, we affirmed a conviction in which the defendant, over a five-day period, directed and transported the victim in selling sex.  820 F.3d 809, 811 (5th Cir. 2016); *see also United States v. Blake*, 868 F.3d 960, 975–76 (11th Cir. 2017) (holding that there was sufficient evidence to prove that a defendant had a reasonable opportunity to observe the victim when he saw the victim only five or six times and when one encounter involved the defendant taking pictures of the girl for twenty minutes).  Furthermore, in *United States v. Valas*, we upheld the conviction of a defendant who had sex with a minor prostitute on two different occasions when the defendant had no other contact with the victim and he did not ask her about her background or history.  822 F.3d 228, 235 (5th Cir. 2016).

Here, we conclude that the evidence leaves no question but that O'Neal had an extensive opportunity to observe D.F.  The record contains evidence that O'Neal "acquired" D.F. from another pimp.  From there, he took D.F. to Dunbar's house.  He then drove around with her multiple times during the week as both a driver and a passenger.  And during the week, D.F. went to O'Neal's house at least once to have sex with him.  Text messages corroborated many of these details.

Considering these numerous encounters with D.F., there is exhaustive evidence to support a conclusion that O'Neal had a reasonable opportunity to observe D.F.

\*     \*     \*

Concluding our plain-error analysis: Although the introduction of the picture and the accompanying testimony was error, and the error was plain,

the evidence did not affect O'Neal's substantial rights.   We reach this conclusion because the evidence of O'Neal's awareness of D.F.'s age is so overwhelming that, notwithstanding the prejudicial nature of the photograph and the accompanying testimony, it had no substantial effect on the jury's verdict.   Stated differently, O'Neal has not shown "'a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Rosales-Mireles*, 138 S. Ct. at 1904–05 (quoting *Molina-Martinez*, 136 S. Ct. at 1343).   Thus, his plain-error challenge fails.

## III.

O'Neal also makes a direct challenge to the sufficiency of the evidence at trial to prove that he knew—or acted with reckless disregard of the fact—that D.F. was a minor, or that he had a reasonable opportunity to observe her.   This argument is addressed above, in which we conclude that the evidence of his knowledge was overwhelming.   Thus, we find no necessity in repeating this argument.

## IV.

O'Neal further argues that the district court erred—under Federal Rules of Evidence 403 and 404(b)—by allowing D.F. to testify that O'Neal engaged in sex with her and that he provided her with drugs.   We think the court did not err.

Because the defendant properly objected, we review the district court's evidentiary ruling for abuse of discretion subject to the harmless error standard. *Valas*, 822 F.3d at 239–40.

No. 17-50320

We first address his Rule 404(b) challenge.[5]　As we have just made mention, Rule 404(b) applies only to evidence of extrinsic acts that are unrelated to the defendant's current crime. *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007).　On the other hand, intrinsic evidence—meaning evidence related to the current crime—"is generally admissible 'so that the jury may evaluate all the circumstances under which the defendant acted.'" *Id.* (quoting *United States v. Royal*, 972 F.2d 643, 647 (5th Cir. 1992)).　Evidence of an act is intrinsic when (1) "it and evidence of the crime charged are inextricably intertwined," (2) "both acts are part of a single criminal episode," or (3) "it was a necessary preliminary to the crime charged." *Id.*　The challenged intrinsic evidence here is admissible to allow the jury to understand the complete episode of the crime and "to evaluate all circumstances under which the defendant acted." *United States v. Ceballos*, 789 F.3d 607, 620–21 (5th Cir. 2015) (quoting *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010)).

We reiterate that O'Neal was charged with sex trafficking a minor.　The evidence showing that he provided the minor with drugs and engaged in sex

---

[5] Federal Rule of Evidence 404

　　**(b) Crimes, Wrongs, or Other Acts.**

　　　　**(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

　　　　**(2) Permitted Uses; Notice in a Criminal Case.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

　　　　　　**(A)** provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

　　　　　　**(B)** do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice.

with her was intrinsic evidence relevant to the charged crime—part of a single weeklong criminal episode.  This conduct does not fall under the prohibitions of Rule 404(b).  *See Sumlin*, 489 F.3d at 689.

Further, O'Neal has not shown that the evidence was barred under Rule 403.  As we have earlier noted, under that rule, a court can exclude relevant evidence only if its probative value is *substantially outweighed* by a danger of unfair prejudice or confusing of the issues, among other reasons.  Although there could be some risk of unfair prejudice or confusing of the issues—because O'Neal was not charged with statutory rape or any drug-related crimes—the testimony was highly probative of O'Neal's denial that he had an opportunity to observe that D.F. was underage.  *See Valas*, 822 F.3d at 235 (finding that the defendant had a reasonably opportunity to observe a female minor victim when he had no contact with her except when he had sex with her on two different occasions).

Thus, the district court did not err under Rule 404(b) or Rule 403 by allowing the evidence of O'Neal having sex with D.F. and providing her with drugs.

V.

Finally, O'Neal argues that the district court plainly erred by imposing an enhancement under U.S.S.G. § 4B1.5(b)(1) for a pattern of activity involving prohibited conduct.  The district court overruled O'Neal's objection that the prior cases referenced by his PSR—in which O'Neal had previously been convicted for trafficking minors—did not qualify as "prohibited sexual conduct" or did not bear sufficient indicia of reliability.  O'Neal argues that the district court's factual findings were insufficient to support the enhancement because the court "failed to identify which federal or state offense the two prior occasions qualified for."

No. 17-50320

This argument is reviewed for plain error, because O'Neal did not raise the argument in the district court. *Olano*, 507 U.S. at 731. But it is unnecessary to address the plain-error standard here, because O'Neal failed to brief the plain error on appeal. He does not contend that the district court made a clear or obvious error, that the error affected his substantial rights, or that the error seriously affects the fairness, integrity or public reputation of judicial proceedings. So, O'Neal has forfeited any contention that the district court committed reversible plain error. *See Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, 854 F.3d 765, 784 (5th Cir. 2017) (issues not adequately briefed are forfeited); *see also, e.g.*, *United States v. Garcia-Lemus*, 509 F. App'x 324, 324 (5th Cir. 2013) (no plain error where the defendant made "no attempt to demonstrate [that the district court's error] . . . would seriously affect the fairness, integrity, or public reputation of judicial proceedings").

## VI.

Although there was evidential error in the trial, we hold no errors require reversal of O'Neal's conviction or sentence. We do not, however, withdraw from our disapproval of the government's conduct in introducing the photograph of D.F.'s sixteenth-birthday cake and its eliciting of unnecessary and prejudicial testimony from D.F. Nevertheless, because of the powerful evidence showing that O'Neal was reckless to the fact that D.F. was underage and because O'Neal had abundant opportunity to observe D.F., the error did not affect O'Neal's substantial rights, and thus does not affect the outcome of the appeal.

We further hold (1) there was sufficient evidence to show that O'Neal was reckless to the fact that D.F. was under eighteen and that he had the reasonable opportunity to observe her, all to establish knowledge of her age; (2) the district court did not err by allowing D.F.'s testimony that O'Neal had

No. 17-50320

sex with her and provided her with drugs; and, finally, (3) O'Neal forfeited his challenge to the enhancement under U.S.S.G § 4B1.5(b)(1).

Accordingly, the judgment of conviction and sentence is, in all respects, AFFIRMED.